James W. DAVIS, Appellant,

v.

The STATE of Texas; the Cities of Houston, Ranger and Gonzales, Texas; and the Transit Authorities of Houston, Texas and Dallas, Texas, Appellees.

No. 03–94–00123–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

---

Tom C. Ingram, Jr., Dallas, for appellant.

Dan Morales, Atty. Gen., David Randell, Asst. Atty. Gen., Collections Div., Austin, for appellees.

Before POWERS, ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

In an action for sales taxes collected but not remitted to the State of Texas, appellant James W. Davis appeals the trial-court judgment rendered in favor of the State of Texas; the Cities of Houston, Ranger, and Gonzales; and the Transit Authorities of Houston and Dallas. We will reverse the trial court's judgment, remanding the cause to the district court for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case were orally stipulated at trial and supported by a single piece of stipulated documentary evidence. In short, by December 31, 1984, Jim Davis Auctioneers, Inc. ("JDA") had collected $190,737.12 in sales taxes; of this amount, state sales taxes totaled $134,350.43, city sales taxes totaled $28,914.43, and transit authority sales taxes totaled $27,472.26. Davis was president and director of JDA throughout the time period at issue; he controlled both the management and financial affairs of JDA. Davis, or those answerable to him, commingled the tax receipts into JDA's operating account and paid out the funds to entities other than appellees. To date, no sales taxes JDA collected have been remitted to appellees.

The Comptroller certified the delinquent amounts to the Attorney General for collection. Based on the certification, appellees filed suit on July 12, 1989.[1] The issues to be determined at trial were Davis's alleged conversion of the sales tax receipts and his liability under section 111.016 of the Tax Code. The trial court rendered judgment in favor of appellees on December 8, 1993. Davis appeals the trial court's judgment.

---

1. Appellees originally filed suit against Jim Davis Leasing, Inc., Jim Davis Oil Field Equipment, Inc., Jim Davis Auctioneers, Inc., James W. Davis, and Lottie Tittle. Appellees' case against Davis and Tittle was severed, and Tittle was subsequently nonsuited. Thirteen Texas cities in addition to the three cities party to this appeal were plaintiffs in the original and severed actions.

## DISCUSSION

### I. Jurisdiction

At the outset, we address appellees' jurisdictional cross point of error by which they contend this Court erred in denying their motion to dismiss for want of jurisdiction because Davis did not timely perfect his appeal. To perfect his appeal, Davis did not file security for costs within thirty days of the signing of the trial court's judgment. Instead, he timely requested findings of fact and conclusions of law from the trial court and thereafter filed a cost bond within ninety days after the judgment was signed. *See* Tex.R.App.P. 41(a)(1) (extending deadline for perfecting appeal from thirty to ninety days after judgment is signed when findings of fact and conclusions of law are timely requested following non-jury trial). Appellees argue that Davis's request for findings of fact and conclusions of law failed to extend the deadline to perfect an appeal because findings of fact and conclusions of law are (1) unwarranted unless a trial has taken place and (2) inappropriate in an agreed case. We will address each argument in turn.

#### A. Trial

█ Appellees remind us that parties may request findings of fact and conclusions of law only in cases tried without a jury. *See* Tex.R.Civ.P. 296. Appellees place much emphasis on the word "tried": they argue that a proceeding based on stipulated evidence, like that in the instant case, cannot be characterized as a "trial" within the meaning of Rule 296, and assert that any request for findings of fact and conclusions of law stemming from such a proceeding therefore does not extend deadlines for perfecting an appeal. We disagree. The "trial" envisioned by Rule 296 is an evidentiary hearing to the court *or* a bench trial on the merits. *Zimmerman v. Robinson*, 862 S.W.2d 162, 164 (Tex.App.—Amarillo 1993, no writ).

█ In the instant cause, the factual evidence was orally stipulated in proceedings before the trial court. One exhibit was introduced and offered into evidence. The trial court subsequently rendered judgment. We conclude that the instant case was "tried ... without a jury" as required by Rule 296; a bench trial on the merits took place regardless of whether the court received only stipulated evidence.

#### B. Agreed Case

Because the proceedings constituted a non-jury trial, we generally would conclude that the timely filing of a request for findings of fact and conclusions of law extended the deadline to perfect an appeal to ninety days after the judgment was signed. *See* Tex.R.App.P. 41(a)(1). However, appellees argue that we should treat the instant cause as an "Agreed Case" under Texas Rule of Civil Procedure 263[2] and hold that a request for findings of fact and conclusions of law is inappropriate and cannot extend the appellate timeline.

█ To qualify as an agreed case, an agreed statement of facts upon which judgment shall be rendered must be filed with the court clerk. Tex.R.Civ.P. 263.[3] The parties in this cause did not strictly comply with Rule 263. However, appellees maintain that "[i]f the parties stipulate all the facts of an action, ... the stipulation *may be treated as a submission upon an agreed statement [pursuant to Rule 263]*." *Lambda Constr. Co. v. Chamberlin Waterproofing & Roofing Sys., Inc.*, 784 S.W.2d 122, 125 (Tex.App.—Austin 1990, writ denied); *see also Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 715 (1945) (treating case submitted on stipulation so complete that "it shows what the controversy between the parties is, and the facts out of which the controversy arose, and leaves nothing for the court but to declare

---

**2.** In further response to the State's argument that the instant case cannot be considered a "trial" within the meaning of Rule 296, we note that Rule 263 is categorized under the general heading, "The Trial."

**3.** Rule 263 also requires the court to sign and certify the agreed statement as correct. Tex. R.Civ.P. 263.

the law arising from the facts" as agreed case).

■ Davis has not challenged appellees' assertion that the instant cause be treated as an agreed case. Although the parties never agreed that the case would be tried pursuant to Rule 263 as an agreed case, neither did they imply that there were other facts as to which they would offer proof if they so desired. The issues at trial were limited to the application of the law to the stipulated facts. In considering all the facts, circumstances, and actions of the parties, we conclude that while not in literal compliance with Rule 263, the instant case may be treated as an agreed case for the purposes of determining the appropriateness of the request for findings of fact and conclusions of law. *See Cobb*, 190 S.W.2d at 715; *Lambda Constr.*, 784 S.W.2d at 125.

### C. Appropriateness of Request for Findings of Fact

■ Ordinarily,

[t]he *courts are without power*, in the absence of a provision in the agreed statement providing otherwise, *to draw any inference, or find any facts, not embraced in the agreement*, unless, as a matter of law, such other inferences are necessarily compelled; and the judgment of the court must only declare the law which necessarily arises from the facts agreed upon.

*Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491, 492 (1923) (emphasis added); *see also Cousins v. Cousins*, 42 S.W.2d 1043, 1046–47 (Tex.Civ.App.—Amarillo 1931, writ ref'd) (on rehearing) (confining trial court to facts contained in agreed statement and allowing no additional findings). Accordingly, findings of fact and conclusions of law *need not* be filed following a judgment rendered on stipulated facts. *Sharyland Water Supply Corp. v. Hidalgo County Appraisal Dist.*, 783 S.W.2d 297, 298 (Tex. App.—Corpus Christi 1989), *aff'd*, 804 S.W.2d 894 (Tex.1991); *see also Perry v. Aetna Life Ins. Co.*, 380 S.W.2d 868, 875

(Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.) ("As a general rule, findings of fact *do not have any place* in the trial of an agreed case.") (emphasis added); *Ocean Accident & Guarantee Corp. v. Riggins*, 291 S.W. 276, 278 (Tex.Civ.App.—Waco 1927, writ ref'd) (stating findings of fact have "no office" in agreed case); *cf. Wylie Indep. Sch. Dist. v. Central Educ. Agency*, 488 S.W.2d 166, 168 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.) (concluding trial court correctly refused to make findings of fact in administrative law case because only questions of law were presented); *Southwest Stone Co. v. Railroad Comm'n*, 173 S.W.2d 325, 328 (Tex.Civ. App.—Austin 1943, writ ref'd w.o.m.) (holding trial court properly refused to make findings of facts in case disposed of by sustaining special exceptions to pleadings because pleadings stated all facts upon which trial court ruled). If findings of fact and conclusions of law are filed in agreed cases, they will be disregarded on appeal. *Cf. Cobb*, 190 S.W.2d at 715 (stating agreed statement of facts and judgment constitute record on appeal of agreed case); *Ocean Accident*, 291 S.W. at 278 (stating findings of fact in agreed case not binding on appeal).

In the context of summary judgment, the Texas Supreme Court recently held that a request for findings of fact and conclusions of law will not extend the appellate timetable "[b]ecause findings of fact and conclusions of law *have no place* in a summary judgment proceeding." *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex.1994) (emphasis added). Our reading of Texas case law indicates that, as in the context of summary judgment, findings of fact generally *have no place* in cases based entirely on undisputed stipulated facts. *See Perry*, 380 S.W.2d at 875.

■ Nevertheless, while findings of fact may ordinarily be inappropriate in agreed cases, at times inferential findings beyond the agreed or stipulated facts may be necessarily compelled by the facts as a matter of law. *See Abilene Hotel Corp. v. Gill*, 187 S.W.2d 708, 712–13 (Tex.Civ.App.—Waco 1945, writ ref'd w.o.m.) (on rehearing) (positing that when agreed facts are evidentiary in

nature as to an ultimate material issue, the parties intend, and in effect agree, that trial court make findings raised by evidence in stipulated facts in order to make conclusion on controlling issue); *see also Hutcherson,* 251 S.W. at 492 (providing exception for court's lack of power to find facts in agreed cases when other inferences are compelled as a matter of law). We conclude that because findings of fact may be necessarily compelled by stipulated facts that are evidentiary in nature, they will not be disregarded in every instance. *See Abilene Hotel,* 187 S.W.2d at 712–13 (assuming in absence of trial court's express findings of fact that trial court found all facts raised by evidence contained in agreed statement in support of judgment). We therefore distinguish the role of findings of fact and conclusions of law in agreed cases where findings *generally* have no place from that in summary judgment cases where findings *unqualifiedly* have no place. *See Linwood,* 885 S.W.2d at 103. We hold that while findings of fact need not be filed in agreed cases, they may be necessary in some rare instances. However, we cannot determine whether findings of fact and conclusions of law are necessary until we have jurisdiction over the cause. Accordingly, since findings of fact and conclusions of law are not always inappropriate, we conclude that a request for such extends the timetable to perfect appeals in all agreed cases. Appellees' jurisdictional cross-point of error is overruled.

## II. Sales Taxes

Davis contends in his second point of error that the trial court erred in applying section 111.016 of the Tax Code ("section 111.016"), as amended effective July 21, 1987, to hold him liable for taxes collected by JDA in 1984 because (1) the amended statute imposes a different duty and status on a taxpayer corporation than the 1984 statute and (2) the application of the amended statute to Davis gives it a constitutionally prohibited retroactive effect.[4] Davis acknowledges that section 111.016, as amended in 1987, sets forth a fiduciary relationship between the state and entities, like JDA, authorized to collect sales taxes on behalf of the state, in which the sales tax collector holds tax receipts, the state's property, in trust for the state. *See Dixon v. State,* 808 S.W.2d 721, 723 (Tex. App.—Austin 1991, writ dism'd w.o.j.). Before the 1987 amendment, however, Davis contends that section 111.016 did not mandate a trust relationship but rather provided for a debtor-creditor relationship between the state and sales tax collectors. Davis cites no authority in support of this position. Yet, he argues sales taxes collected before 1987 did not become state property until remitted to the state. Davis maintains that he cannot be liable on theories of conversion or breach of fiduciary duty when appellees had no ownership interest in the taxes JDA collected in 1984. To hold him liable for either tort, Davis argues the trial court retroactively applied amended section 111.016 to him in contravention of Article I, section 16 of the Texas Constitution and section 311.022 of the Code Construction Act.

In response, appellees contend that even in 1984 when JDA collected the sales taxes at issue, the pre-amendment form of section 111.016 set forth a trust relationship between the state and sales tax collectors with respect to sales tax funds collected.[5] As such, they contend JDA's failure to remit the receipts

---

**4.** The statute as it existed in 1984 provided: "Any person who receives or collects a tax or any money represented to be a tax from another person is liable to the state for the full amount of the taxes plus any accrued penalties and interest on the taxes." Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex.Gen.Laws 1490, 1504 (Tex.Tax Code Ann. § 111.016, since amended). The current statute, as amended in 1987, provides:

Any person who receives or collects a tax or any money represented to be a tax from another person *holds the amount so collected in trust* for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.

Tex.Tax Code Ann. § 111.016 (West 1992) (emphasis added).

**5.** Appellees also argue that Davis is personally liable for the tax funds because the Tax Code imposes individual liability on "[a]ny person who receives or collects a tax." Tex.Tax Code Ann. § 111.016 (West 1992). Since we dispose of this

constituted the tort of conversion for which Davis can be held jointly liable with JDA. *See id.* at 723–24. Appellees argue that the amendment's scant legislative history suggests its purpose was to clarify existing law. In addition, appellees suggest that the structure of the Texas sales tax system establishes an agency relationship imposing duties on the agent tax collector with respect to the principal's—the state's—property.

No Texas case law addresses the relationship section 111.016 imposed on sales tax collectors and the state as to sales taxes collected before 1987. Moreover, the parties indicate that no legislative history is available to shed light on the meaning of the 1987 amendment to section 111.016. However, observing that section 111.016, located under the Tax Code chapter entitled "Collection Procedures," applies generally to all taxes imposed by the Tax Code, we logically look to the specific portions of the Tax Code imposing the sales tax and detailing the sales tax scheme and manner of payment for guidance as to the relationship existing between the state and sales tax collectors both before and after the 1987 amendment to section 111.016. *See* Limited Sales, Excise, and Use Tax Act, Tex.Tax Code Ann. §§ 151.001–.801 (West 1992 & Supp.1995) (the "Act").

Enacted in 1961 when Texas "fac[ed] the greatest financial crisis in its history," the sales tax was imposed to raise revenue to be used by the state for the health and welfare of all Texans. Limited Sales, Excise and Use Tax Act, 57th Leg., 1st C.S., ch. 24, art. VIII, § 4, 1961 Tex.Gen.Laws 71, 114. An excise tax,[6] the sales tax is characterized as a transaction tax imposed on each sale of a taxable item. Tex.Tax Code Ann. § 151.051 (West 1992); *Calvert v. Canteen Co.,* 371 S.W.2d 556, 558 (Tex.1963). The seller must collect the sales tax by adding the tax to the sales price of the taxable item; the tax is the purchaser's debt to the seller until paid. Tex.Tax Code Ann. § 151.052(a)(1), (2) (West

1992). Generally, sales taxes are due to the comptroller quarterly or on or before the twentieth day of the month. *Id.* § 151.401(b) (West Supp.1995). Sales taxes paid to the state by the seller are computed based on the application of the sales tax rate to the total receipts of taxable sales and services collected from the purchaser. *Id.* § 151.410 (West 1992). However, the taxpayer may deduct a percentage of the tax amount due as reimbursement for the cost of collecting the taxes. *Id.* § 151.423. Persons failing to report or pay taxes imposed may be subject to civil or criminal penalties. *See id.* §§ 151.703, .7031, .709 (West 1992 & Supp.1995).

While sellers have a legal duty to collect sales taxes from purchasers, both sellers and purchasers are liable to the state for sales taxes. *Bullock v. Foley Bros. Dry Goods Corp.,* 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied) ("[T]he tax may be collected [by the comptroller] from the seller or purchaser or both until the tax has been paid. . . ."); *Bullock v. Delta Indus. Constr. Co.,* 668 S.W.2d 502, 504 (Tex.App.—Austin 1984, no writ) (upholding authority of state to collect sales tax from purchaser when sellers defaulted on obligations to collect sales tax from purchaser); *see also* Tex. Tax Code Ann. § 151.417 (West 1992) (providing for direct payment of sales tax by purchaser under some circumstances). Both sellers and purchasers can therefore be characterized as taxpayers. However, the seller must also be characterized as a tax collector, and because of this, seller and purchaser liability to the state as taxpayers arises for differing reasons: the purchaser, as a statutory debtor to the seller but ultimately liable to the state, owes sales tax on its purchase transaction; the seller also owes the state the sales taxes a customer incurs because the seller must, under the state's authority, collect those taxes. Under the Act, then, the economic burden of the tax is on the purchaser: the sales tax will either be collected by the seller from the purchaser under the

---

case on other grounds, we do not reach appellees' alternate argument.

**6.** An excise tax is "[a] tax on the manufacture, sale, or use of goods." Black's Law Dictionary 563 (6th ed. 1990).

state's authority and then remitted to the state; or, if the seller fails to bill the purchaser, the tax will be collected directly by the state from either the seller or purchaser.[7] *See Malcuit v. State,* 134 B.R. 185, 187 (Bankr.N.D.Tex.1991) (observing that burden of sales tax is on purchaser and that seller collects it on behalf of the state). By contrast, the seller, as collector of the sales tax paid by the purchaser, bears the legal incidence of the tax; the seller pays a tax in the sense that it remits the tax payments collected from the purchaser to the state.

We conclude that even though the Act's detailed provisions for collection and payment of sales taxes contain no express language describing the seller as an agent for the collection of the state's taxes or providing that the taxes collected be held in trust for the state, the Act's provisions nevertheless set forth an implicit agency-principal relationship, rather than a debtor-creditor relationship, between sellers in their role as tax collectors and the state. *Cf. Anderson v. State,* 221 Wis. 78, 265 N.W. 210, 212 (1936) ("Of course any [sales tax] agent who fails to turn over collections [to the state] by his failure becomes a debtor, but becoming a debtor does not destroy the relation of agency."). We are inclined toward this view because of the Act's provisions (1) allowing sellers reimbursement for expenses of collection; (2) subjecting sellers to civil or criminal penalties for failure to report or pay taxes imposed; (3) requiring sellers to collect sales tax from purchasers by adding the tax to the sales price; and (4) providing that the sales tax is the purchaser's debt to the seller. *See Texas Co. v. Miller,* 165 F.2d 111, 114 (5th Cir.1947) (outlining similar factors as influential to court's determination that, under Texas law, seller of gasoline is state's collecting agent of gasoline sales tax); *see also Anderson,* 265 N.W. at 212 (finding agency relationship existed since stated intent of

gasoline sales tax statute was to impose tax on motor vehicle owners, who court presumed to be gasoline purchasers). *But see State v. Marcotte,* 418 A.2d 1118 (Me.1980) (finding debtor-creditor relationship when sales tax statute contained no express duty to segregate funds collected nor requirement that taxes be held in trust for state and when statute expressly provided tax collected became personal debt of seller). The tax was initially imposed to generate funds for the state's use, and thus the state, not the seller as the intermediary sales tax collector, is the beneficiary of the tax.

Similar agency relationships have been held to exist in other tax collector circumstances. *See Daywood v. Calvert,* 478 S.W.2d 152, 155–56 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.) (observing that cigarette excise tax collectors are state agents and tax "is money belonging to the state, held in trust for the state by the ... person or firm collecting the money"); *Miller,* 165 F.2d at 113–14 (concluding under Texas statute imposing tax on sales of gasoline, seller is state's collecting agency, required and authorized to collect gasoline tax from purchaser and transmit it to the state). *See generally* 68 Am.Jur.2d *Sales and Use Tax,* § 1 (1993) ("[T]he seller has the statutory duty to collect the tax *for* the taxing jurisdiction.") (emphasis added). We hold that because of the implicit agency relationship set forth in the Act, sales tax monies are state funds from the moment of the seller's collection, and the seller, as the state's agent, has not only a statutory duty but also a fiduciary duty to remit these funds to the state.

Our conclusion finds support in bankruptcy cases, which, for the purpose of establishing debt priority, have addressed the status of sales taxes collected in Texas before 1987 but not remitted to the state and have concluded that in the seller's hands, collected sales taxes constitute property held in trust for the

---

7. If the state collects the tax from the seller, the seller has a cause of action against the purchaser to recover the tax it should have originally collected from the purchaser. *See* Tex.Tax Code Ann. § 151.052(a)(3); *Reaves & Becker Co. v.*

*Wilkes Co.,* 392 S.W.2d 379, 380 (Tex.Civ.App.—Austin 1965, writ dism'd) (holding such an action arises from seller's duty imposed by law to collect sales tax from purchasers).

state. Under the Bankruptcy Code, a debtor is liable for certain taxes such as income and social security taxes which are "required to be collected or withheld." 11 U.S.C. § 507(a)(7)(C) (1988); *see Rosenow v. Illinois Dep't of Revenue*, 715 F.2d 277, 280 (7th Cir.1983); *see also Malcuit*, 134 B.R. at 187 (emphasizing that § 507(a)(7)(C) taxes are those required to be collected from third parties). Taxes falling under § 507(a)(7)(C) are commonly referred to as "trust fund taxes." *Malcuit*, 134 B.R. at 187. Comparing the language of § 507(a)(6)(C) to similar language in the Tax Code, bankruptcy courts have concluded that sales taxes collected before the amendment of section 111.016 fall into the Bankruptcy Code's trust fund taxes category for priority purposes. *See In re Gulf Consol. Servs., Inc.*, 110 B.R. 267, 267–68 (Bankr.S.D.Tex.1989) (holding that pre-amended version of section 111.016 required sales taxes collected from 1980 to 1983 to be of a "trust-fund" nature); *In re Avant*, 110 B.R. 264, 265–66 (Bankr.W.D.Tex.1989) (concluding sales taxes collected before 1987 pursuant to Tax Code § 151.052 were taxes a retailer collected from third parties and were trust fund taxes); *see also Malcuit*, 134 B.R. at 187–88 (including sales taxes owed by tax collector from sales tax transactions in 1972 and 1973 as priority claim trust fund taxes under Bankruptcy Code § 507(a)(7)(C)); *see generally In re Al Copeland Enters., Inc.*, 133 B.R. 837, 838 (Bankr.W.D.Tex.1991) (commenting that trust fund language of amended section 111.016 clarified status of collected sales taxes as trust funds). Thus, bankruptcy courts considered sales taxes imposed by and collected under the Tax Code to be of a "trust fund nature" before the amendment of section 111.016; now, however, as *In re Al Copeland Enterprises* suggests, the taxes are not merely of a "trust fund nature," but have been expressly characterized by statute as trust funds. *See id.*

█ In light of our conclusion that the Act sets forth an agency relationship rather than a debtor-creditor relationship, we hold that even before the amendment of section 111.016 to include "trust fund" language, the sales taxes collected by agent-sellers on behalf of the state, while not expressly characterized as trust funds, were of a trust fund nature and thus were the state's property. Accordingly, since sales taxes collected before the amendment of section 111.016 were not the seller's property but were only collected by the seller on behalf of the state, our holding in *Dixon* is applicable to the instant cause to subject Davis to liability for his conduct in actively participating in the tort of conversion through his spending of sales tax money collected by JDA for purposes other than the payment of the taxes to appellees. *See* 808 S.W.2d at 724. The trial court therefore did not retroactively apply amended section 111.016 to Davis. The agency relationship arising from the Act's provisions operates under both versions of section 111.016. We overrule Davis's second point of error.

In his third and fourth points of error, Davis complains that the trial court's judgment awards to appellees were erroneous because no evidence was presented to support the judgment amounts. In their second cross-point of error, appellees argue that the trial court's judgment amounts were erroneous because stipulated evidence established that appellees were damaged in amounts greater than those awarded.

The stipulated "payment agreement" in evidence indicates JDA originally owed appellees $190,737.12 in sales taxes. Of this amount, state sales taxes totaled $134,350.43, city sales taxes totaled $28,914.43, and transit authority sales taxes totaled $27,472.26. The stipulated "payment agreement" additionally indicates that by February 12, 1986, JDA owed appellees a total of $217,641.00 in sales taxes, including interest, for the collection period through December 31, 1984. Of this amount, state sales taxes plus interest totaled $154,457.98, city sales taxes plus interest totaled $32,078.80, and transit authority sales taxes plus interest totaled $31,104.22. None of the stipulated amounts equal the total judgment award of $401,821.75.

Appellees assert that the judgment award properly includes interest accruing from 1986 up to the day of judgment as well as penal-

ties for JDA's failure to pay. *See* Tex.Tax Code Ann. § 111.016 (holding tax collector liable for full amount of tax collected as well as accrued penalties and interest on amount collected). Even if appellees are correct, no stipulated evidence at trial specifies interest owed by JDA after February 12, 1986, or any penalties owed. In fact, the stipulated "payment agreement" indicates that while interest would continue to accrue at statutory rates, all penalties had been waived. As such, the judgment award exceeds the stipulated taxes due. Accordingly, we overrule appellees' second cross-point of error and sustain Davis's third and fourth points of error.

Davis's first point of error argues that the trial court erroneously relied on and cited an unpublished opinion as authority for its judgment. However, the final judgment included in the record does not cite to any authority. Regardless of the authority upon which the trial court relied, we have concluded the trial court's judgment of Davis's liability is proper under *Dixon*. *See* 808 S.W.2d at 724. We overrule Davis's first point of error.

### CONCLUSION

Because the amount of damages awarded in the judgment is incorrect, we reverse the trial court's judgment. We remand this cause to the trial court for further proceedings to determine the proper amount recoverable by appellees and to render judgment in accordance with this opinion.