TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00352-CV







Marken Enterprises, Inc., a Texas Corporation; and


Edward D. Endsley, Individually, Appellants



v.



State of Texas; The City of Houston, Texas; and The Transit


Authority of Houston, Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-08606, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING








 The State of Texas; City of Houston, Texas; and the Transit Authority of Houston,
Texas (collectively "State") sued Marken Enterprises, Inc. ("Marken") and Edward D. Endsley,
individually, as president and director of Marken, for the failure to remit state and local sales
taxes. After a bench trial, the trial court awarded judgment for the State. Appellants challenge
the judgment in three issues. We will affirm.


FACTUAL BACKGROUND AND PROCEDURAL HISTORY


 Marken owned and operated a Mexican food restaurant in Houston. From
December 1, 1994 through April 30, 1995 ("liability period"), Marken sold tangible personal
property subject to the Texas sales tax and collected sales taxes from its patrons in the amount of
$16,366.50. Although Marken filed the required monthly sales tax reports during the liability 
period, Marken did not remit any checks with these reports. 

 In July 1996, the State brought suit to recover unpaid state and local sales taxes,
penalties, interest, attorneys' fees, and costs for the liability period. The trial was before the court
on Joint Stipulations of Fact and Joint Stipulations of Evidence. The trial court awarded judgment
in favor of the State against Marken and Endsley, jointly and severally, for the amount of
Marken's sales tax liability including penalties, interest, costs, and attorney's fees in the amount
of $17,655.08, together with interest at the statutory rate. See Tex. Tax Code Ann. § 111.010(d)
(West 1992). 


DISCUSSION


Joint and Several Liability for Corporate Sales Tax Debt

 In their first issue, appellants contend that there was insufficient evidence to support
the trial court's judgment that Endsley is jointly and severally liable for the sales tax liability of
Marken. Appellants argue that no individual liability can be imposed on Endsley for Marken's
sales tax liability because the $16,366.50 collected in sales tax receipts by Marken during the
liability period was not paid to an entity "other than the state," see Dixon v. State, 808 S.W.2d
721, 724 (Tex. App.--Austin 1991, writ dism'd w.o.j.), but rather, were paid to the State. 
Marken argues that it paid $17,982.44 (1) to the State from October 1994 through June 1995, thus
the State received all the sales tax receipts to which it was entitled. 

 The State argues Endsley can be held individually liable because he committed the
torts of conversion and breach of fiduciary duty by wrongfully assuming and exercising dominion
and control over the State's sales tax receipts. In support of its position, the State relies on section 

111.016 of the Tax Code, which provides:


Any person who receives or collects a tax or any money represented to be a tax
from another person holds the amount so collected in trust for the benefit of the
state and is liable to the state for the full amount collected plus any accrued
penalties and interest on the amount collected.



Tex. Tax Code Ann. § 111.016 (West 1992). (2) 

 The parties stipulated at trial to the following facts. During the liability period,
Marken operated a restaurant in Houston and sold tangible personal property--prepared food for
immediate consumption--subject to Texas sales taxes. From October 1, 1994 through April 30,
1995, Marken collected sales taxes from persons purchasing food in the amount of $16,366.50. (3) 
Marken commingled the sales tax receipts with other corporate monies. Marken filed monthly
sales tax reports but did not attach checks for the payment of the sales tax receipts. From October
1994 through March 1995, Marken paid $10,124.44 to the Comptroller for its mixed beverage tax
liability, penalties and interest, along with the appropriate mixed beverage tax reports. 

 Endsley was president and a director of Marken. Endsley had actual knowledge
that Marken collected sales taxes during the period and consented and approved of their collection. 
Endsley also had actual knowledge and did not object to the commingling of the sales tax receipts
with other corporate monies. Endsley was the only individual authorized to sign checks on
Marken's bank account. 

 It is the corporation, as the taxpayer, that owes the State a fiduciary duty to hold
the sales tax receipts in trust for the benefit of the State. State v. Mink, No. 03-98-00032-CV, slip
op. at 7 (Tex. App.--Austin, February 11, 1999, no pet. h.); see also Dixon, 808 S.W.2d at 723-24. However, this Court has held individuals liable for a corporation's sales tax obligation if the
individual has engaged in tortious conduct. See, e.g., Mink, slip op. at 9-10; Dixon, 808 S.W.2d
at 724. Here, the State alleged Endsley committed the tort of conversion. Conversion is the
wrongful exercise of dominion and control over another's property to the exclusion of, or
inconsistent with, the owner's rights to that property. Dixon, 808 S.W.2d at 723. The essence
of conversion is not acquisition of property by the wrongdoer, but a wrongful deprivation of it to
the owner. Bradley v. McKinzie, 226 S.W.2d 458, 460 (Tex. Civ. App.--Eastland 1950, no
writ). An act for the conversion of money will lie if a party breaches an obligation to deliver to
another party a specific and identifiable sum of money. Dixon, 808 S.W.2d at 723. A party can
sue for conversion of money if the money is delivered to another party for safekeeping, the keeper
claims no title, and the money is required or intended to remain segregated. Id. 

 Sales taxes are a tax on the transaction and are generally collected at the point of
sale. Davis v. State, 904 S.W.2d 946, 952 (Tex. App.--Austin 1995, no writ). Section 111.016
imposes on the taxpayer (seller of goods) a fiduciary duty to hold the dollars its receives in trust
for the benefit of the State. Dixon, 808 S.W.2d at 723. If a corporation breaches its fiduciary
duty to the State, it does so because of the conduct of a corporate agent. Mink, slip op. at 9. That
is, a corporation must act through its agents. Id. While the corporation, as the taxpayer, must
satisfy its fiduciary duty to the State by holding collected sales tax receipts in trust and by
remitting them to the State, an officer or agent of the corporation may be held liable for the tax
receipts based on his own individual tortious conduct in instigating, aiding or abetting the
corporate taxpayer in spending the State's money for something other than its sales tax liability. 
Dixon, 808 S.W.2d at 724; Mink, slip op. at 7. 

 This Court recently addressed an individual's liability for corporate sales taxes in
State v. Mink. In that case, Mink contended that he could not be individually liable for conversion
because he did not divert any sales tax receipts to his own personal use. Mink, slip op. at 8. 
Rather, he contended that the sales tax receipts were used on legitimate corporate expenses. Id. 
We determined that it was immaterial that Mink did not convert the tax receipts to his own
personal use, and held him individually liable for the corporation's sales tax liability. Id. at 9. 
We concluded that Mink's actions as an officer and agent of the corporation in knowingly
collecting, commingling, failing to remit sales tax receipts, and paying other corporate obligations,
caused the corporation to breach its fiduciary duty to the State to remit the tax receipts held in trust
for the State. Mink, slip op. at 8-9.


 Similarly, by knowingly collecting sales tax receipts, commingling the trust funds
with other corporate funds, and failing to pay the trust fund money to the State, Endsley caused
Marken, as the agent of the State for the collection of sales taxes, to breach its fiduciary duty to
remit the trust funds to the State. See Mink, slip op. at 9-10; Dixon, 808 S.W.2d at 723. As in
Mink, it is immaterial how Endsley spent the State's sales tax receipts. See Mink, slip op. at 9;
Bradley, 226 S.W.2d at 460 (it is of no importance what subsequent application was made of
converted property). As trust fund taxes, sales tax receipts are not available for the corporation
to spend on any other liability, including other obligations the taxpayer may owe the State. See
Tex. Tax Code Ann. § 111.016 (West 1992). Endsley's conduct caused Marken to breach its
fiduciary duty to remit the State's sales tax receipts. Accordingly, we conclude that Endsley is
liable for Marken's sales tax liability based on his own tortious conduct. (4)

 We conclude that the evidence is both legally and factually sufficient to support the
trial court's judgment. (5) We overrule appellants' first issue.


Comptroller Sustained Damages by Appellants' Failure to Remit Sales Taxes

 Appellants argue in their second issue that the State received all the money due,
therefore, no damages were sustained by the State. Appellants argue that by paying $17,982.44 
to the State, (mixed beverage tax payments of $10,124.44 plus the $7,858 levied by the State),
Marken's sales tax liability of $16,366.50 has been satisfied. Appellants' argument ignores the
simple fact that Marken had multiple tax liabilities payable to the State. Clearly, payment of one
tax liability does not eliminate the obligation to pay the other. 

 Appellants also argue that the State should credit the amounts paid by Marken as
mixed beverage taxes to Marken's sales tax liability. In support of its position, appellants cite 34
Texas Administrative Code section 3.2. (6) Appellants argue that section 3.2 allows the Comptroller
to apply tax payments without regard to the manner in which the taxpayer designates them. Such
reliance is misplaced.

 Section 3.2 addresses only the issue of application of payments to pay periods. The
payments made by Marken, which it now argues should be credited by the Comptroller to its sales
tax liability, were designated by Marken as payment for its mixed beverage tax liability. Section
3.2 requires the comptroller to credit payments as the taxpayer designates, unless there is a statute
of limitations problem, which was not present here. In this case, the Comptroller simply applied
the payments as designated by the taxpayer. We conclude Marken's failure to remit the sales tax
receipts damaged the State. We overrule appellant's second issue. 


Motion of Frivolous Claim

 In their third issue, appellants contend the trial court erred in failing to grant
Endsley's Motion of Frivolous Claim. See Tex. Civ. Prac. & Rem. Code §§ 105.001-.004 (West
1997). Because appellants failed to provide any trial court order showing action on the motion
or their objection to the trial court's refusal, if any, to rule, appellants failed to preserve any error
for this Court to review. See Tex. R. App. P. 33.1(a)(2) & 34.5(a)(5). Moreover, because we
affirm the trial court's judgment in favor of the State, we conclude appellants are not entitled to
fees, expenses, and attorney's fees. See Tex. Civ. Prac. & Rem. Code § 105.002 (West 1997). 
Accordingly, we overrule issue three. 


CONCLUSION


 Having overruled each of appellants' three issues, we affirm the trial court's
judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: March 25, 1999

Do Not Publish
1. Marken calculates the $17,982.44 figure by adding the $10,124.44 it paid in mixed
beverages taxes with the $7,858 the Stated seized from its bank account.
2. Act of July 21, 1987, 70th Leg., 2d C.S., ch. 1, § 1, 1987 Tex. Gen. Laws 1 (amended
1995) (current version at Tex. Tax Code Ann. §111.106 (West Supp. 1999)). 
3. The State subsequently levied $7,858 from Marken's bank account in June 1995. This
amount was applied to satisfy Marken's sales tax liability, penalties and interest for October and
November 1994. The Comptroller applied the remainder in partial satisfaction of Marken's sales
tax liability for December 1994. Thus, the liability period begins with December 1994.
4. We do not base our decision on Endsley's status as a corporate officer. 
5. Our review of the evidence was guided by the well-established principles found in Glover
v. Texas General Indemnity Co., 619 S.W.2d 400, 401 (Tex. 1981), In re King's Estate, 150 Tex.
662, 244 S.W.2d 660, 661-62 (1951), and Raw Hide Oil & Gas, Inc. v. Maxus Exploration, 766
S.W.2d 264, 276 (Tex. App.--Amarillo 1988, writ denied). In addition, because there were no
findings of fact or conclusions of law filed or required, it is implied that the trial court made all
the necessary findings to support its judgment. Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989). When the implied findings are supported by the evidence, the appellate court must
uphold the judgment on any theory of law applicable to the case. Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990).
6. Section 3.2 (Application of Payments) provides:


(a) Payments received by the comptroller for application against existing liabilities
will be credited toward the period designated by the taxpayer under conditions
which are not prejudicial to the interest of the State of Texas. A condition which
is considered prejudicial is the imminent expiration of the statute of limitations for
a period or periods. Nondesignated payments shall be applied in the order of the
oldest liability first, until the payment is exhausted. Crediting of a payment toward
a specific liability period will be first against the tax, with any surplus used to pay
off penalty and interest unless the comptroller determines that a different order of
payment credit should be followed with regard to a particular tax or factual
situation. 


(b) Under circumstances where multiple type tax liabilities exist, such as city and
state sales tax, payments will be divided proportionately between the taxes so that
each tax shall share the payment on the basis of the amount due each tax.


34 Tex. Admin. Code § 3.2 (1998).



>Motion of Frivolous Claim

 In their third issue, appellants contend the trial court erred in failing to grant
Endsley's Motion of Frivolous Claim. See Tex. Civ. Prac. & Rem. Code §§ 105.001-.004 (West
1997). Because appellants failed to provide any trial court order showing action on the motion
or their objection to the trial court's refusal, if any, to rule, appellants failed to preserve any error
for this Court to review. See Tex. R. App. P. 33.1(a)(2) & 34.5(a)(5). Moreover, because we
affirm the trial court's judgment in favor of the State, we conclude appellants are not entitled to
fees, expenses, and attorney's fees. See Tex. Civ. Prac. & Rem. Code § 105.002 (West 1997). 
Accordingly, we overrule issue three. 


CONCLUSION


 Having overruled each of appellants' three issues, we affirm the trial court's
judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: March 25, 1999

Do Not Publish
1. Marken calculates the $17,982.44 figure by adding the $10,124.44 it paid in mixed
beverages taxes with the $7,858 the Stated seized from its bank account.
2. Act of July 21, 1987, 70th Leg., 2d C.S., ch. 1, § 1, 1987 Tex. Gen. Laws 1 (amended
1995) (current version at Tex. Tax Code Ann. §111.106 (West Supp. 1999)). 
3. The State subsequently levied $7,858 from Marken's bank account in June 1995. This
amount was applied to satisfy Marken's sales tax liability, penalties and interest for October and
November 1994. The Comptroller applied the remainder in partial satisfaction of Marken's sales
tax liability for December 1994. Thus, the liability period begins with December 1994.
4. We do not base our decision on Endsley's status as a corporate officer. 
5. Our review of the evidence was guided by the well-established principles found in Glover
v. Texas General Indemnity Co., 619 S.W.2d 400, 401 (Tex. 1981), In re King's Estate, 150 Tex.
662, 244 S.W.2d 660, 661-62 (1951), and Raw Hide Oil & Gas, Inc. v. Maxus Exploration, 766
S.W.2d 264, 276 (Tex. App.--Amarillo 1988, writ denied). In addition, because there were no
findings of fact or conclusions of law filed or required, it is implied that the trial court made all
the necessary findings to support its judgment. Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989). When the implied findings are supported by the evidence, the appellate court must
uphold the judgment on any theory of law applicable to the case. Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990).
6. Section 3.2 (Application of Payments) provides:


(a) Payments received by the comptroller for application against existing liabilities
will be credited toward the period designated by the taxpayer under conditions
which are not prejudicial to the interest of the State of Texas. A condition which
is considered prejudicial is the imminent expiration of the statute of limitations for
a period or periods. Nondesignated payments shall be applied in the order of the
oldest liability first, until the payment is exhausted. Crediting of a payment toward
a specific liability period will be first against the tax, with any surplus used to pay
off penalty and interest unless the comptroller determines that a different order of
payment credit should be followed with regard to a particular tax or factual
situation. 


(b) Under circumstances where multiple type tax liabilities exist, such as city and
state sales tax, payments will be divided proportionately between the taxes so that
each tax shall share the payment on the basis of the amount due each tax.


34 Tex. Admin. Code § 3.2 (1998).