Opinion filed July 30, 2015



### In The

# Eleventh Court of Appeals

_____

## No. 11-13-00156-CV

_____

## TSL FOUR SUNS CONSTRUCTION, LLC, Appellant

## V.

## EAGLE REMEDIATION SERVICES, INC., Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. CV-1242506**

## MEMORANDUM OPINION

This is an appeal from a judgment of the trial court in favor of Eagle Remediation Services, Inc. in which it awarded Eagle money damages and attorney's fees on its breach of contract claim against TSL Four Suns Construction, LLC. We affirm.

As general contractor, TSL was in the process of constructing four residential buildings for a senior living center. Prior to the completion of any of the buildings,

mold was discovered in the interstitial space between the first floor and the underground garage in each of the four buildings. TSL contracted with Eagle to remove the mold in two of the buildings. By June 23, 2010, Eagle completed the work and requested payment of $197,103 for the mold removal. TSL paid the full amount requested. At the time, both parties were under the impression that no state sales tax was due on the services provided by Eagle. TSL assumed that the services were excluded from taxation under Section 151.0048(b) of the Texas Tax Code because they were performed as part of a new residential construction project.

Over a year after Eagle had finished the mold remediation, the Texas State Comptroller audited Eagle for sales tax compliance for the years 2008 through 2010. The Comptroller made an initial determination that the services provided by Eagle to TSL were subject to the state sales tax. Eagle notified TSL. In TSL's response to Eagle, it referenced "Sales Tax Collection Notice dated July 18, 2011" and informed Eagle that TSL's position was that the project was part of new residential construction. Eagle presented TSL's position to the Comptroller. After months of discussions between the three parties, the Comptroller ultimately issued a tax assessment of $16,261. Rather than pursue the matter to a hearing, Eagle paid the tax and subsequently sent a request for payment to TSL for $19,513.20 ($16,261 for the taxes plus a 20% markup).

TSL refused to pay the $19,513.20 invoice. Eagle sued TSL for breach of contract, to recover on a sworn account, and for unjust enrichment. After a bench trial, the trial court entered judgment in favor of Eagle on its claim for breach of contract.

In six issues, TSL contends that the trial court erred when it (1) determined that the mold remediation services were subject to state sales tax; (2) found that all conditions precedent had been met by Eagle; (3) determined that Eagle had fully performed under the terms of the contract; (4) failed to find that any further payment

2

by TSL would violate the contract provision that the project's cost would not exceed $197,103; (5) determined that TSL breached the contract; and (6) found that Eagle had suffered actual damages. In addition, TSL challenges several of the trial court's findings, specifically numbers three, four, five, twelve, nineteen, twenty-two, twenty-four, twenty-six, twenty-seven, twenty-eight, and thirty-four.

A trial court's findings of fact in a bench trial are reviewed for legal and factual sufficiency under the same standards used to review a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

We will first address TSL's challenge to finding numbers three and four. Finding number three states that "Plaintiff Eagle Remediation Services, Inc[.] ('Eagle' or 'Plaintiff') and Defendant TSL Four Suns Construction, LLC ('TSL') entered into a valid, existing contract and contract modification, which were admitted into evidence as Plaintiff's exhibit numbers 1 and 3." Finding number four states that "Eagle and TSL also entered into corresponding purchase order agreements, which were admitted into evidence as Plaintiff's exhibit numbers 2 and 4." TSL contends that these findings misstate the evidence if the findings suggest that Plaintiff's Exhibit Nos. One and Three are independent from Plaintiff's Exhibit

Nos. Two and Four because the evidence showed that Plaintiff's Exhibit Nos. One through Four, taken together, constituted the agreement between the parties. Eagle does not dispute that Plaintiff's Exhibit Nos. One through Four constitute the agreement of the parties. We do not read these findings to suggest that the purchase orders are not part of the agreement, and we will treat the four exhibits, taken together, as the contract between the parties. Therefore, we overrule TSL's challenge to the trial court's findings contained in numbers three and four.

In its first issue, TSL asserts that the trial court erred when it determined that the mold remediation services were taxable. In finding of fact/conclusion of law number nineteen, the trial court found "that Texas State Sales Tax [was] applicable to the services provided by Eagle to TSL and that the assessment by the Comptroller was correct." Whether the services provided by Eagle were taxable is a question of law. We do not believe, however, that the issue of taxability was properly before the trial court, nor do we believe that the issue is properly before us for review. Normally, judicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent. *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex. App.—Austin 2005, pet. denied). One exception to the exhaustion doctrine is when a pure question of law is involved. *Id.* at 634 (citing *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986), *abrogated on other grounds by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (2000)). However, "questions dedicated to an administrative agency as part of its exclusive jurisdiction in a statutory scheme to interpret are not subject to collateral attack in district court without first exhausting the administrative remedies provided in the statutory scheme." *Id.* at 635 (relying on *Grounds*, 707 S.W.2d at 892).

Section 151.0101(b) of the Texas Tax Code provides that "[t]he comptroller shall have exclusive jurisdiction to interpret Subsection (a) of this section." TEX.

4

TAX CODE ANN. § 151.0101(b) (West 2015). Subsection (a) defines "Taxable services" to include "real property services." *Id.* § 151.0101(a)(11). Because the Comptroller has been given exclusive jurisdiction to determine whether a service is a taxable real property service, TSL cannot collaterally attack the question of whether the services were taxable. The Comptroller determined, during the audit, that the mold remediation services were taxable and assessed a sales tax against Eagle. Eagle did not pursue the Comptroller's decision to a hearing. TSL was made aware of the controversy, but TSL chose not to join Eagle in challenging the Comptroller's position or in pursuing its administrative remedies to the fullest extent. Therefore, TSL is precluded from asserting that the services were not taxable. Although it was not necessary for the trial court to determine the issue of taxability, the trial court did not err when it followed the Comptroller's ruling and concluded that the services were taxable. We overrule TSL's first issue.

In its second issue, TSL argues that the trial court erred when it found that all conditions precedent had been met by Eagle as stated in finding number two. Similarly, TSL alleges in its third issue that the trial court erred when it determined that Eagle had fully performed under the terms of the contract as the trial court stated in finding number five. Because these issues are intertwined, we will address them together.

TSL asserts that Eagle was required, under the terms of the contract, to provide "close out documents" within thirty days of the completion of the project and that Eagle failed to do so when it did not send the invoice for sales tax until over two years after the project had been completed. We agree.

The contract does not define "close out documents"; however, Eagle's representative testified that an invoice would be considered a "close out document." She also agreed that, under the terms of the contract, Eagle was required to send the invoice to TSL. There is no dispute that Eagle failed to send the invoice within thirty

5

days of completion. At the time the project was completed, however, the parties did not believe that the project was taxable. It was not until the Comptroller audited Eagle that Eagle became aware that it needed to invoice TSL for the sales tax. As the purchaser of Eagle's services, TSL was responsible for any tax due on the services. The tax due is a debt of the purchaser to the seller until paid, and the seller can recover the taxes in the same manner as the original sales price. *Id.* § 151.052(a); *Davis v. State*, 904 S.W.2d 946, 953 n.7 (Tex. App.—Austin 1995, no writ) ("If the state collects the tax from the seller, the seller has a cause of action against the purchaser to recover the tax it should have originally collected from the purchaser.") (citing TAX § 151.052(a)(3); *Reaves & Becker Co. v. Wilkes Co.*, 392 S.W.2d 379, 380 (Tex. Civ. App.—Austin 1965, writ dism'd)). Eagle sent TSL the invoice for sales tax at least twenty-eight months after the project was complete and two months after the assessment was due to the Comptroller. While the audit does not excuse Eagle from sending the invoice under the terms of the contract, it does explain why Eagle did not comply with the terms.

TSL argues that it was excused from paying the invoice regardless of whether the requirement was a condition or a covenant. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). The contract provides that payment is due "within 30 days from owner[']s receipt of close out documents or progress billing applications." We do not believe that payment is conditioned on receipt of the invoice within thirty days of project completion; payment is conditioned on receipt, but not on receipt within a specific time period. Therefore, the trial court did not err when it found in finding number two that all conditions precedent had been met. The trial court did err, however, when it found in finding number five that "Eagle fully performed and satisfied its obligations, duties and responsibilities pursuant to the contract, contract modification, and purchase orders."

6

Although Eagle failed to fully perform its obligations under the contract, TSL was not excused from paying the invoice unless Eagle's breach of the provision that required Eagle to send the invoice within thirty days was material. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."). When determining whether a breach is material, we consider the following factors: (1) the extent to which the injured party will be deprived of the benefit which it reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the party failing to perform will cure his failure, taking account of the circumstances, including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. *Id.* at 693, n.2 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). "The less the non-breaching party is deprived of the expected benefit, the less material the breach." *Id.* at 693.

Eagle did not breach a contract term relating to its actual mold remediation services. Eagle breached a term concerning when Eagle was required to send an invoice. TSL argues that the breach was material because the breach was a delay of over two years. TSL does not explain how the two-year delay prejudiced it in any way except for its contentions that it was entitled to rely on the finality of Eagle's invoicing as of the end of the thirty day period and that it believed the project was closed. As we have stated, TSL is the party that ultimately bears the responsibility of paying the sales tax. Eagle's failure to include the sales tax in the original invoice was a result of both party's belief that the services were not taxable. TSL has not been deprived of any benefit under the contract. To the contrary, TSL has received

7

a benefit from Eagle—Eagle paid TSL's sales tax to the Comptroller in a timely manner and avoided penalties that could have been assessed by the Comptroller. We hold that Eagle's breach was not material and, therefore, TSL was not excused from paying the sales tax. TSL's second and third issues are overruled.

In its fourth issue, TSL contends that the trial court erred when it disregarded the "cost not to exceed" term in the contract. TSL argues that it agreed to a maximum cost of $197,103, that it paid that amount when Eagle sent the original invoice, and that the trial court erred when it awarded damages in excess of the maximum amount TSL agreed to pay. Eagle argues that the not-to-exceed term applied only to the individual work line items and that it did not include sales tax as evidenced by the purchase order.

When we construe a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To identify the intentions of the parties, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

The General Services Agreement provides that, "[u]nless expressly set forth," the proposal does not include sales tax and that the client will be invoiced sales tax, when applicable, as a separate line item. The proposal did not incorporate or include sales tax in the pricing. The Time & Material Fee Schedule provides: "The rates contained in this schedule are exclusive of federal, state and local sales or use taxes and any permits incident to performance of the work." The fee schedule further provides that "Eagle shall be compensated for all costs incurred for state, federal, or local sales or use taxes, and/or the cost of any necessary permits on the basis of Eagle's cost plus twenty percent." The purchase order provided that the work for building four was a "T & M and a not to exceed $100,679" and that the work for building two was a "T & M and a not to exceed $96,424." The subtotal and the total

8

were listed as $197,103. Neither the subtotal nor the total were designated as "not to exceed" amounts. Sales tax was not included in the purchase order; the line for sales tax was left blank.

Because the General Services Agreement expressly states that the "Client will be invoiced state sales tax, when applicable, as a separate line item" and because neither the proposal nor the purchase order expressly includes or incorporates sales tax in the not-to-exceed amounts, we hold that the sales tax is separate from those amounts and that the trial court did not err when it did not apply the not-to-exceed term to the sales tax. We also hold that the trial court did not err when it did not apply the not-to-exceed term of the contract to the twenty percent markup. The basis for the twenty percent markup was a provision in the Time & Material Fee Schedule. However, the provision was not part of the section that listed the fees for time and material; it was part of the section titled, "OTHER CHARGES AND TERMS," and was also part of the same paragraph that provided that "[t]he rates contained in this schedule are exclusive of" taxes. The twenty percent markup could not be calculated until the taxes were calculated, and thus, the markup, like the sales tax, was separate from each line item that was designated as a "T & M and a not to exceed." Therefore, the trial court did not err when it did not apply the not-to-exceed term to the twenty percent markup, nor did it err when it found in finding number twenty-four and finding number twenty-eight that TSL was liable to Eagle for $3,252.20—the amount of the twenty percent markup of the assessed sales tax. We overrule TSL's fourth issue.

In its fifth issue, TSL contends that the trial court erred when it found that TSL breached the contract. Although TSL did not dedicate a specific portion of its argument section in its brief to this contention, TSL did challenge the trial court's findings as to the breach of contract claim. Specifically, TSL challenged the trial court's findings that TSL was liable for the sales tax (finding number twenty-two);

9

that the invoice was correct, due, and owing from TSL to Eagle (finding number twenty-six); and that TSL failed to pay the amount due under the contract and, thereby, breached the contract with Eagle (finding number twenty-seven). As we have already discussed, the Comptroller determined that Eagle's services were taxable, Eagle invoiced TSL for the sales tax due and owing, and TSL was not excused from paying the sales tax despite Eagle's delay in sending the invoice. Eagle's representative testified that TSL had not paid the sales tax invoice, and TSL offered no evidence at trial that it had paid the sales tax on the project. Therefore, the trial court did not err when it found that TSL was liable for the sales tax stated in the invoice and that TSL breached the contract when it failed to pay the invoice. We overrule TSL's fifth issue.

TSL asserts in its sixth issue that the trial court erred when it calculated damages for Eagle. Specifically, TSL alleges that Eagle was required to prove the actual time and materials expended on the project and that, because Eagle failed to prove the actual cost of the project, the trial court could not calculate the amount of taxes due. TSL paid the original invoice that did not include sales tax without objection. There is no evidence that TSL requested a detailed invoice that included the time and materials expended on the project, nor is there evidence that TSL questioned the cost of the project. Eagle had no complaint about the payment of the original invoice. The Comptroller assessed taxes on the sales price, the amount TSL paid with no objection. In closing arguments, TSL's counsel argued that Eagle had not proven what the time and materials charges were and that there was no way for the court to determine whether the taxes were not already encompassed in the amount that Eagle charged for the work that it completed. As we have previously stated, the General Services Agreement provided that taxes would be billed as a separate line item and that the proposed cost did not include taxes unless the proposal expressly included taxes. Neither the proposal nor the purchase order expressly

10

incorporated taxes, and TSL did not present any evidence that the taxes were included in the not-to-exceed amounts. The trial court was not asked to determine the sales price, nor is that issue before us on appeal. The sales price billed was the sales price paid, and the Comptroller assessed taxes on that amount. TSL's sixth issue is overruled.

There are two other findings that TSL challenged that we have not addressed: finding number twelve and finding number thirty-four. Finding number twelve states that "Eagle requested that TSL pay the sales tax assessment or provide its basis for any sales tax exemptions and/or exclusions that may apply to the services." TSL, in one sentence, argues that "[t]here is no evidence or insufficient evidence in the record to support this finding." We disagree. Eagle's representative testified that Eagle sent TSL a letter and explained that Eagle's original invoice to TSL had been selected by the Comptroller for audit and that the Comptroller found that sales tax was due. In response to Eagle's letter, TSL sent a letter to Eagle and said that the work was done as residential new construction. Eagle's representative testified that other customers also provided Eagle with additional information to support an exemption and that others just paid the tax. Eagle's trial counsel testified that Eagle asked TSL on numerous occasions to provide further information so that Eagle could turn it over to the Comptroller in hopes to change the Comptroller's initial determination. After many months of discussions between the parties, the Comptroller decided that the original assessment of $16,261 would stand. Eagle paid the assessment and sent TSL an invoice requesting payment. This evidence supports the trial court's finding; therefore, the trial court did not err when it entered finding number twelve.

As to finding number thirty-four in which the trial court found that "Eagle [was] entitled to recover its Court costs expended in this case," we hold that the trial court did not err when it awarded costs against TSL. TSL does not make any specific

11

argument as to why the trial court erred when it entered finding number thirty-four; however, we assume that TSL complains about this finding because it believed that it was not liable for the sales tax and, thus, did not breach the contract. Because we have held otherwise, the trial court did not err.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


July 30, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.