# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00202-CV

**V. A. C., Appellant**

**v.**

**J. L. W., Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 265,705-C, HONORABLE JAMES LEE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Raising twenty-one issues, V.A.C., acting pro se, appeals from the trial court's final order terminating his parental rights to his children, X.A.C-W. and I.T.C-W., following a jury trial.[1] He complains about the sufficiency of the evidence, the trial court's admission and exclusion of evidence, and various other trial court rulings. For the following reasons, we affirm the trial court's final order of termination.[2]

---

[1] We use initials to refer to the parents and their children. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8. V.A.C. is the father, and J.L.W. is the mother of the children.

[2] Pending before this Court is V.A.C.'s motion to file a supplemental brief. We grant this motion and file his supplemental brief. We, however, deny his remaining pending motions.

Further, this Court received and filed V.A.C.'s reply brief on August 24, 2018. To the extent that V.A.C. raises new arguments in his reply brief, they are waived, and we do not consider them. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court."); *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (same).

## Background[3]

Appellee J.L.W. and V.A.C. divorced in July 2014 when their two children, X.A.C-W. and I.T.C-W., were two and three years old.[4]

In November 2016, J.L.W. filed a petition to terminate the parent-child relationship between V.A.C. and their children, alleging two statutory grounds for termination, that: (i) V.A.C. engaged in conduct that endangered the physical or emotional well-being of the children; and (ii) he knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date her petition was filed. *See* Tex. Fam. Code § 161.001(b)(1)(E), (Q).

At the time that J.L.W. filed the petition, V.A.C. was incarcerated. *See generally Corson v. State*, Nos. 03-15-00054-CR, 03-15-00055-CR, 03-15-00056-CR, 03-15-00057-CR, 2015 Tex. App LEXIS 5457 (Tex. App.—Austin May 29, 2015, no pet.) (mem. op., not designated for publication). V.A.C. was convicted and sentenced in December 2014 for the following charged offenses: (1) aggravated assault with a deadly weapon with bodily injury, twenty years; (2) aggravated kidnapping, forty years; (3) burglary of a habitation with intent to commit other felony, forty years; and (4) abandoning or endangering a child with intent to return, two years. The

---

[3] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in the opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

[4] The appellate record in this case does not contain a copy of the divorce decree, but V.A.C. attempted to appeal from the decree in 2016. This Court dismissed his appeal from the divorce decree for want of jurisdiction because his notice of appeal was not timely filed. *See Corson v. Wiggins*, No. 03-16-00730-CV, 2016 Tex. App. LEXIS 12389 (Tex. App.—Austin Nov. 18, 2016, no pet.) (mem. op.). Our opinion reflects that the trial court signed the divorce decree on June 24, 2014. *See id.*

latter offense stemmed from an incident that occurred in October 2013, in which V.A.C. left the children, who were one and two years of age at the time, unattended. *See id.* at *2. The other offenses stemmed from an incident that occurred on March 14, 2014. At the time of that incident, V.A.C. was on deferred-adjudication community supervision for the charged offense stemming from the October 2013 incident, V.A.C. and J.L.W. had separated, J.L.W. had filed for divorce, and she had a protective order against V.A.C. V.A.C. went to J.L.W.'s house, shot through the front door, and then proceeded to shoot J.L.W. multiple times in her leg, stomach, hip, and arms while she was holding one of their children and the other child was present. *See id.* at *2–3. V.A.C. then took one of the children and "fled." *See id.* V.A.C. pleaded guilty to the charged offenses from the March 2014 incident and true to the motion to adjudicate as to the charged offense from the October 2013 incident.

The jury trial in this case occurred in February 2018. The children were represented by an attorney ad litem. The witnesses were the parties, and J.L.W.'s exhibits included copies of V.A.C.'s judgments of convictions from the incidents in March 2014 and October 2013. In her testimony, J.L.W. confirmed that she and V.A.C. divorced in July 2014 when the children were two and three years old; she had a protective order against him prior to the March 2014 incident that had not expired; the children had not had any contact with V.A.C. after his incarceration; and they did not ask about him or "know who he [was]." She also testified that the children were happy and healthy and "doing very well in school"; she "[made] sure that they get everything they need"; and that she did not need child support. She further recounted the March 2014 incident, describing how V.A.C. shot her multiple times while she was holding one of the children, that the other child was

present, and that V.A.C. "took [her] youngest [child] and [her] vehicle and left after [she] went into the bathroom and put [her] back to the door." She further testified that she did not believe that it would be safe for the children to be around V.A.C.; that communication with him would not be helpful to the children because he was not "emotionally stable enough"; that he had not provided financial support or health insurance benefits since he was incarcerated; and that he was a "threat to [her] and the children" because he had harmed them in the past. It was her belief that V.A.C. did not have the ability to provide any care for the children and that it was in the children's best interest to terminate his parental rights. The attorney ad litem's recommendation to the jury also was to terminate V.A.C.'s parental rights.

In his testimony, V.A.C. did not dispute that he was convicted of the charged offenses from the March 2014 incident and that he was not eligible for parole until 2034. He further admitted that he shot J.L.W. "six times" and "kidnap[ped]" one of his children. His theory to the jury was that they were only being allowed to hear incomplete evidence and that he currently was not a danger to the children. He testified about several mental disorders that he had suffered and that he was not in his "right mind" during the March 2014 incident, but that he was "healed" so that he was "no longer a danger to [his] children." He also testified about his activities in prison and plans going forward, including writing novels and forming a company.

The jury found that the parent-child relationship between V.A.C. and the children should be terminated. Appellant filed a "motion for retrial" on March 5, 2018, and requested, "if need be," that the trial court "order a hearing on the merits of this motion." The trial court did not

4

hold a hearing on the motion. The trial court signed an order of termination in accordance with the jury's verdict on March 29, 2018. This appeal followed.

## Analysis

V.A.C. raises twenty-one issues on appeal, complaining about the sufficiency of the evidence, the admission and exclusion of evidence, and other rulings of the trial court.[5] We do not address his issues in chronological order but have grouped them according to their subject matter.

### Sufficiency of Evidence

We begin with V.A.C.'s issues that in substance challenge the legal and factual sufficiency of the evidence to support the termination of his parental rights. *See* Tex. Fam. Code § 161.001(b)(1), (2). In his fourth and fifth issues, V.A.C. argues that there was "no evidence" or "insufficient" evidence that he was a "current danger" to his children because there was no evidence of "any dangerous actions" after March 2014. In his thirteenth issue, V.A.C. argues that J.L.W. and the attorney ad litem "presented only conclusory statements for their danger arguments." In his sixteenth issue, V.A.C. argues that he "presented substantial, uncontroverted evidence of his turnaround." And, in his seventeenth issue, V.A.C. argues that "[t]he jury's verdict was contrary to the evidence presented to them."

---

[5] In addressing his issues, we hold V.A.C. to the same legal standards as parties represented by counsel, "even as we liberally construe [his] arguments and filings." *See Stewart v. Texas Health & Human Servs. Comm'n*, No. 03-09-00226-CV, 2010 Tex. App. LEXIS 9787, at *5–6 & n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.) ("[P]ro se appellants are held to the same standard as parties represented by counsel to avoid giving unrepresented parties an advantage over represented parties." (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978))).

*Standard of Review*

Termination of parental rights requires proof of one of the predicate grounds in section 161.001(b)(1) of the Texas Family Code and that termination is in the best interest of the child. *See id.* § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable standard of proof is "clear and convincing evidence." Tex. Fam. Code § 161.206(a); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) ("Due process requires the application of the clear and convincing standard of proof in parental termination cases."). The clear and convincing burden of proof is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see also* Tex. Fam. Code § 101.007 (defining "clear and convincing evidence"). Although "parental rights are of constitutional magnitude," "it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d at 26.

Legal sufficiency review of the evidence to support a termination finding requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence to support a termination finding, an appellate court reviews the record to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations." *In re C.H.*, 89 S.W.3d at 25; *see also In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (describing factual sufficiency standard of review in appeals from parental termination orders and

6

noting that appellate court "must give due deference to a jury's factfindings" and "not supplant the jury's judgment with its own").

*Evidence Supporting Predicate Ground*

The jury was given two alternative predicate grounds, but we limit our review to the evidence supporting that V.A.C. "knowingly engaged in criminal conduct that has resulted in [his]: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for [his children] for not less than two years from the date of [J.L.W.'s] filing the petition." *See* Tex. Fam. Code § 161.001(b)(1)(Q); *see also In re A.V.*, 113 S.W.3d at 362 (explaining that only one predicate ground is necessary to support termination of parental rights when there is also best interest finding). J.L.W. filed her original petition to terminate V.A.C.'s parent-child relationship in November 2016, and copies of the judgments of convictions from the March 2014 incident were admitted as exhibits. Among the convictions, V.A.C. pleaded guilty and was convicted of aggravated kidnapping, which offense has a required mental state of knowing or intentional conduct. *See* Tex. Penal Code § 20.04 ("A person commits an offense [of aggravated kidnapping] if he intentionally or knowingly abducts another person . . . ."); *In re C.D.E.*, 391 S.W.3d 287, 300 (Tex. App.—Fort Worth 2012, no pet.) (holding that "to establish that a parent 'knowingly engaged in criminal conduct' as set forth in subsection (Q), the Department must prove more than mere negligence").

The evidence also was undisputed that, in November 2016 when J.L.W. filed her petition, V.A.C. was in prison and serving a sentence of forty years for the conviction of aggravated kidnapping and that he was not eligible for parole before 2034. V.A.C. answered "Yes, Ma'am" when asked, "Is it correct, sir, that you are not eligible to be paroled until March of 2034?" J.L.W.

7

also testified that V.A.C. had not provided financial support or health insurance for the children's care during his imprisonment; V.A.C. admitted that he had filed several documents with the trial court during the pendency of the case in which he claimed to be indigent; and he was subject to a protective order that prohibited him from having contact with the children. This uncontroverted evidence established that V.A.C. knowingly engaged in conduct that resulted in his conviction and imprisonment and his inability to care for the children for at least two years from November 2016, when J.L.W. filed her petition.

Viewing the evidence under the applicable standards of review, we conclude that the evidence was legally and factually sufficient to support the predicate statutory ground in section 161.001(b)(1)(Q) of the Texas Family Code to terminate V.A.C.'s parental rights. *See* Tex. Fam. Code § 161.001(b)(1)(Q); *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25.

*Evidence Supporting Best Interest Finding*

Turning to the evidence to support the best interest finding, we similarly conclude that it was legally and factually sufficient to support the jury's findings that termination of V.A.C.'s parental rights was in the best interest of the children. The jury was instructed that relevant factors in this determination include: (i) the desires of the child, (ii) emotional and physical needs of the child now and in the future, (iii) emotional and physical danger, if any, to the child now and in the future, (iv) parental abilities, (v) plans for the child by the individuals or agency seeking custody, (vi) programs available to assist the individual to promote the best interest of the child, (vii) stability of the home or proposed placement, (viii) acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (ix) any excuse for the acts or omissions,

8

if any, of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code § 263.307(a), (b) (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment").

In his issues referenced above, V.A.C. primarily focuses on the third *Holley* factor—the danger, if any, to the children now and into the future—arguing that there was no evidence that he currently is a danger to the children. The *Holley* factors, however, are not exhaustive, not all of them are present in every case, not all of them need to be proven to determine a child's best interest, and evidence presented to satisfy the predicate statutory ground also may be probative of the child's best interest. *In re C.H.*, 89 S.W.3d at 27–28; *Holley*, 544 S.W.2d at 372.

The evidence was undisputed that the children had not had any contact with V.A.C. after he was convicted and imprisoned in 2014. J.L.W. testified that the children "don't know who he is," have any memory of him, talk about him, or ask about him. J.L.W. also testified about her reasons for filing suit to terminate V.A.C.'s parental rights—"[b]ecause [she felt] like it's in the best interest of [her] children. [She] want[s] to keep them safe, and [she] want[s] them to be happy." J.L.W. testified that V.A.C. had not accepted responsibility for his actions and that he posed a danger and "threat" to her and the children because he had harmed them in the past. As to the children's current situation, she testified that she "make[s] sure that they get everything they need" and that the children were happy, healthy, and "doing very well in school," and that she did not need child support.

9

Although V.A.C. testified that he was "healed" and described his plans for the future, including writing a novel, the jury could have credited J.L.W.'s testimony to conclude that, if V.A.C. were allowed contact with the children going forward, the children would be in emotional danger. The jury also could have credited the evidence supporting the predicate ground for termination in its best interest determination—the evidence of V.A.C.'s conduct during the March 2014 incident, including his admission that he shot J.L.W. "six times" and abducted one of his children, and the resulting convictions and imprisonment for terms of twenty and forty years. *See re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (explaining that, although not dispositive, parent's criminal history "is a factor in determining the best interest of the children" and, "in determining the weight of this factor, [courts] consider the expected length of [parent]'s imprisonment and whether it can be inferred from [parent]'s criminal conduct that he has endangered the safety of the children").

Viewing the evidence under the applicable standards of review, we conclude that the evidence was legally and factually sufficient to support that terminating V.A.C.'s parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. Because we have concluded that the evidence was legally and factually sufficient to support the jury's findings as to the predicate statutory ground and the children's best interest, we overrule V.A.C.'s fourth, fifth, thirteenth, sixteenth, and seventeenth issues.

**Admission of Evidence**

In his fifteenth issue, V.A.C. argues that the trial court abused its discretion by admitting a letter that V.A.C. mailed to J.L.W. at her work address in July 2016 because he did not

know that the protective order that prohibited him from contacting J.L.W. was still in effect when he mailed the letter. V.A.C. argues that, on its face, the protective order lapsed in December 2015 and that he was unaware that it did not expire because he was incarcerated at that time and, therefore, that the trial court "failed to use sound judgment when knowingly allowing a clear mistake to be used as a showing of intentional harm." He also argues that he was denied "his right to know and examine all evidence submitted against him" because the exhibit that contained the letter also included a card from him to the children, "which could've actually been helpful."

V.A.C., however, did not raise these arguments when the trial court admitted the exhibit with the letter and card. To preserve complaint for appellate review of a trial court's evidentiary ruling, a party generally must present a timely request, objection, or motion, state the specific grounds therefor, and obtain a ruling from the trial court. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a) (addressing preserving claim of error in ruling to admit or exclude evidence). Thus, he has failed to preserve his arguments about the letter and card for our review. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103. Further, even if he had preserved his arguments, we would conclude they were without merit.

As V.A.C. recognizes, appellate courts review a trial court's evidentiary rulings for abuse of discretion. *Southwestern Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727–28 (Tex. 2016). The "test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *ICON Benefit Adm'rs II, L.P. v. Abbott*, 409 S.W.3d 897, 906 (Tex. App.—Austin 2013, pet. denied) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). An appellate court "must uphold the trial court's evidentiary

11

ruling if there is any legitimate basis for the ruling," *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998), and "will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment," *id.* (citing Tex. R. App. P. 44.1).

Here the trial court was well within its discretion when it admitted the letter and card because they were relevant to the best interest determination. *See Holley*, 544 S.W.2d at 371–72 (including among relevant factors, acts or omissions of parent that may indicate that existing parent-child relationship is not proper one); *see also* Tex. R. Evid. 401 (defining relevant evidence); *see also Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43. V.A.C. does not dispute that he wrote and then mailed the letter and card to J.L.W. at a time when he was subject to a protective order that prohibited him from doing so. *See* Tex. Fam. Code § 85.025(c) (extending protective order when person subject to order is imprisoned on date protective order would expire under general rule). In the body of the letter, V.A.C. stated that "the sole reason for this letter [was] to try [and] get in contact with [their] kids" and that he had "never done them wrong," and he asked J.L.W. to "give [his] card to the [children]." He also addressed the parties' past relationship, including asking J.L.W. to "sit down [and] analyze [her]self for one moment, . . . then ask [her]self to list a single, 1, uno, just 1 incident that [she] spoke of, that did not start with something [she] did." In her testimony about the letter, J.L.W. explained her reasons for why the letter caused her concern:  (i) "He just stated in the letter that he's never meant to do the children harm, which, I mean, he could have killed me or the kids, and harm to me would have harmed the children"; (ii) "he's blaming me for what's

12

happening"; and (iii) "he still—with that letter, . . . he still tries to contact me, even though he's not supposed to have any contact."

We also observe that, even if V.A.C. believed that the protective order had lapsed when he sent the letter, he has not cited, and we have not found, authority that would support the proposition that a mistaken understanding of the law would legally excuse violating a protective order. Further, as to his contention that he was unaware of the card, we need go no further than to observe that, in the letter, V.A.C. referred to the card, asking J.L.W. to give it to the children. For these reasons, we overrule V.A.C.'s fifteenth issue.

**Exclusion of Evidence**

In his sixth issue, V.A.C. argues that "[t]he trial court abused its discretion by mandating no evidence predating 3/14/2014 was relevant or admissible." V.A.C. focuses on exhibits that the trial court did not allow him to offer into evidence—documentation concerning his "suicidal thoughts" and marriage counseling in May and October 2013, a "social work triage assessment" of him in August 2013, and a transcript of classes that he took in 2012 and 2013. As part of this issue, he also focuses on excluded exhibits of a certificate of on-the-job training as a sewing machine operator in October 2016, a degree audit from Adams State University listing classes that he was taking in 2017, and a notarized statement dated July 18, 2017 by "Tamieka Corson" that J.L.W. "may be trying to keep the kids out of [V.A.C.]'s life."

To the extent V.A.C. is complaining that the trial court did not allow him to present evidence other than the exhibits that he identifies in his briefing, V.A.C. has failed to preserve his complaints for our review because he did not make an offer of proof concerning the substance of

what the excluded evidence would have been. *See* Tex. R. Evid. 103; *In re M.G.N.*, 491 S.W.3d 386, 399 (Tex. App.—San Antonio 2016, pet. denied) (explaining offers of proof that preserve challenges to trial court's exclusion of evidence); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 339 (Tex App.—San Antonio 2000, pet. denied) ("The failure to make an offer of proof containing a summary of the excluded witness's intended testimony waives any complaint about the exclusion of the evidence on appeal.").

As to the exhibits that V.A.C. references in his briefing, the trial court within its discretion could have concluded that they were inadmissible because they were not relevant to the questions before the jury. *See* Tex. R. Evid. 401 (defining relevant evidence); *Berry-Helfand*, 491 S.W.3d at 727–28; *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43. Further, even if the trial court erred in excluding the exhibits that V.A.C. addresses on appeal, V.A.C. has not shown that their exclusion "probably caused the rendition of an improper judgment" or "probably prevented [him] from properly presenting [his] case to the court of appeals." *See* Tex. R. App. P. 44.1(a). We overrule his sixth issue.

**Other Trial Court Rulings**

*"Motion for Retrial"*

In his first issue, V.A.C. contends that the trial court erred by failing to hold a hearing on his unsworn "motion for retrial" and cites Texas Rule of Appellate Procedure 21.3 as support for this issue. Rule 21.3, however, addresses grounds for granting new trials in criminal cases. *See* Tex. R. App. P. 21.3 (listing grounds for awarding criminal defendant new trial). Further, a trial court generally is not required to hold a hearing on an unsworn motion for new trial. *See* Tex. R. Civ. P.

14

320 (explaining when motion for new trial should be granted), 329b(c) (explaining that motion for new trial was considered overruled by operation of law if motion was not determined by written order within seventy-five days after judgment was signed); *Olsen v. Commission for Lawyer Discipline*, 347 S.W.3d 876, 887 (Tex. App.—Dallas 2011, pet. denied) ("Generally, a hearing on a motion for new trial is not mandatory."). We overrule his first issue.

*Findings of Fact and Conclusions of Law*

In his second issue, V.A.C. argues that the trial court "failed to produce and supply" V.A.C.'s request for findings of fact and conclusions of law. V.A.C. complains about the trial court's failure to make findings of fact and conclusions of law concerning various rulings by the trial court during the pendency of the case, such as its evidentiary rulings during trial, and cites Texas Rule of Appellate Procedure 44.1(a)(2) as support for his position. *See* Tex. R. App. P. 44.1(a)(2) (addressing reversible error in civil cases that "probably prevented the appellant from properly presenting the case to the court of appeals").

Findings of fact and conclusions of law generally are not available after a jury trial. *See* Tex. R. Civ. P. 296 ("In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law."); *Davis v. Texas*, 904 S.W.2d 946, 949 (Tex. App.—Austin 1995, no writ) ("[P]arties may request findings of fact and conclusions of law only in cases tried without a jury."); *see also International Union, United Auto., Aerospace & Agric. Implement Workers of Am.-UAW v. General Motors Corp.*, 104 S.W.3d 126, 129 (Tex. App.—Fort Worth 2003, no pet.) ("Findings and conclusions are appropriate if there is an evidentiary hearing and the trial court is called upon to determine questions of fact based on

15

conflicting evidence."); *Roberts v. Roberts*, 999 S.W.2d 424, 433–34 (Tex. App.—El Paso 1999, no

pet.) (explaining when findings of fact and conclusions of law are available in context of "combined

jury/bench trial"). Further, findings of fact "are required only when they relate to ultimate or

controlling issues" and are not required on evidentiary matters. *Roberts*, 999 S.W.2d at 434.

This case was tried to a jury, and the trial court's order of termination is in accordance

with the jury's findings that V.A.C.'s parental rights should be terminated. We conclude that

V.A.C.'s request for findings of fact and conclusions of law was not appropriate and, thus, that the

trial court did not err by not complying with his request. *See* Tex. R. Civ. P. 296; *Davis*, 904 S.W.2d

at 949. We overrule his second issue.

*Trial Court's Reference to Convictions*

In his third issue, V.A.C. urges that the trial court's "repeated remarks during trial

about [his] convictions prejudiced him and assassinated his character." As support for this issue,

V.A.C. argues that the best-interest determination required viewing the "whole picture" and that a

parent's criminal history is just one factor in the determination and that it is not dispositive. *See*

*In re C.T.E.*, 95 S.W.3d at 466 (explaining that "termination of parental rights should not become

an additional punishment for imprisonment for any crime").

V.A.C., however, did not raise this complaint with the trial court, and the judgments

of conviction were admitted into evidence.[6] V.A.C. has not identified in the record where he made

---

[6] V.A.C. objected to the admission of the judgments of conviction unless the trial court allowed him to offer evidence that he "was insane at the time" that the offenses were committed and that, therefore, he should not be held responsible for them. In overruling V.A.C.'s objection, the trial judge explained his reasoning as follows:

16

the trial court aware of the complaint that he raises with this Court about the trial court's "repeated" references to the convictions and how that "prejudiced him and assassinated his character." Thus, he has not preserved this issue for our review. *See* Tex. R. App. P. 33.1(a).

Further, even if he had preserved this issue for our review, we would find it to be without merit. The evidence of V.A.C.'s convictions and resulting sentences were central to the issues before the jury—whether to terminate V.A.C.'s parental rights—and, based on our review of the record, we conclude that the trial court did not improperly reference this evidence. We overrule his third issue.

*Children's Absence from Trial*

In his seventh and eighth issues, V.A.C. argues that "[t]he trial court abused its discretion by refusing to allow the children to present their desires" and "failed to substantiate the children's safety was in question when refusing to allow them to attend trial." In his ninth issue, he argues that the trial court abused its discretion by denying his oral deposition request to depose J.L.W. and the children.

V.A.C., however, has not cited authority that would support his position that the trial court erred by deciding that the children, who were six and seven years of age at the time, would not attend the trial or testify. V.A.C. cites the Confrontation Clause, but its protections do not apply in

---

[I]nsanity was a procedural issue that you should have brought forward at the criminal trial seeking to have a finding of not guilty by reason of your insanity, which was a pleading and a defensive stance available to you in your criminal proceedings. And, yet, according to these copies of the convictions, you pled guilty to the felonies and true to the abandonment issue.

17

the context of this civil suit. *See* U.S. Const. amend. VI (stating that, "[i[n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"). Further, the record does not reflect that V.A.C. served a trial subpoena on the attorney ad litem for the children, and he cross-examined J.L.W. at trial. We overrule his seventh, eighth, and ninth issues.

*Mental Health Examinations for Children and V.A.C.*

In his tenth and eleventh issues, V.A.C. contends that the trial court abused its discretion by denying his motions for mental health examinations for himself and the children. V.A.C., however, has failed to cite authority that would support his position that it was the trial court's role in the context of this civil suit to provide him with expert assistance. *Cf. De Freece v. State*, 848 S.W.2d 150, 155 (Tex. Crim. App. 1993) (stating "principle that due process requires that the indigent accused in a criminal trial must be equipped with the 'basic tools' to ensure 'a proper functioning of the adversary process'" (citing *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985))). We also observe that neither party designated a psychological expert or "disclosed a psychologist's records for possible use at trial." *See* Tex. R. Civ. P. 204.1. We overrule V.A.C.'s tenth and eleventh issues.

*Jury Charge Complaints*

In his twelfth issue, V.A.C. argues that the trial court abused its discretion by denying his request for additional instructions, definitions, and questions to be included in the jury charge. V.A.C. filed a document titled "Instructions for Jurors" and orally objected to the charge as submitted and requested additional questions. The trial court denied his request for additional

instructions, overruled his objections, and submitted the case to the jury with broad-form questions and accompanying instructions regarding the alternate grounds for termination, the best interest determination, and the required standard of proof. *See* Tex. R. Civ. P. 277 (requiring court, "whenever feasible," to submit cause to jury "upon broad-form questions").[7]

Based on our review of the record, we conclude that the trial court did not abuse its discretion in denying V.A.C.'s request for additional instructions and overruling his objections to the charge. *See Berry-Helfand*, 491 S.W.3d at 727–28 (explaining that appellate courts review jury-charge rulings for abuse of discretion). We overrule V.A.C.'s twelfth issue.

*Sheriffs' Conduct*

In his fourteenth issue, V.A.C. argues that he was prejudiced by the sheriffs' "overzealous conduct" during trial. He complains that the sheriffs were "constantly moving, hovering around [V.A.C.] as if he were far too dangerous to allow the tiniest amount of free moment." He, however, failed to raise this complaint with the trial court during trial and, therefore, has failed to preserve this complaint for our review. *See* Tex. R. App. P. 33.1(a). We further observe that the record does not reflect improper conduct by sheriffs who were present during trial. We overrule V.A.C.'s fourteenth issue.

---

[7] The clerk's record does not contain a copy of the signed jury charge. The reporter's record, however, reflects that the jury answered "Yes" to the termination questions as to each child, that the charge was signed by the presiding juror, and that the jury's verdict was unanimous.

*Constitutional Claims*

In his eighteenth issue, V.A.C. argues that the termination of his parental rights was unconstitutional. Throughout his brief, V.A.C. also urges that the trial court's various rulings violated his Due Process rights and his right to a fair trial. His primary argument seems to be that he should have been allowed to present evidence about the validity of his convictions because his excuse of "insanity" was never considered in the criminal proceedings. As support for his position, V.A.C. refers to exhibits that he attempted to have admitted into evidence—medical records, pleadings in the State's criminal case against him, and a transcript from the criminal case in which V.A.C. sought to withdraw his pleas based on a claim of insanity during the March 2014 incident. The trial court denied V.A.C.'s request to admit these documents as exhibits.[8] In his supplemental brief, he further argues in his nineteenth, twentieth, and twenty-first issues, about the "general constitutional unfairness of this proceeding in its entirety" and that the children's due process rights and rights to effective assistance of counsel were violated, asserting that the proceeding focused on the best interest of the parent, and not the children, and that the attorney ad litem failed to perform his required duties.

---

[8] During one of the pretrial hearings in the context of V.A.C.'s requests as to the jury charge, the trial judge explained his reasoning to V.A.C. about V.A.C.'s attempts to challenge the validity of the convictions from the March 2014 incident in this case:

> I think that what you're asking is for there to be, in effect, a retrial of your criminal conviction that would say, I did not knowingly engage in criminal conduct because of mental issues that I had at the time. Those mental issues should have been a defense to the conviction. I don't know if they were brought up or not. But the fact that you engaged in criminal conduct that resulted in incarceration for two years or more is the question before the civil jury.

Given our resolution of his other issues and our review of the record that reflects V.A.C. fully participating in the proceeding, including during trial, we conclude that V.A.C. has not shown a violation of his constitutional rights or that the trial was unfair or that the trial court abused its discretion in excluding V.A.C.'s exhibits concerning the underlying criminal proceeding as to his convictions from the March 2014 incident. *See Berry-Helfand*, 491 S.W.3d at 727–28; *see also F.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00487-CV, 2017 Tex. App. LEXIS 11681, at *25–27 (Tex. App.—Austin Dec. 15, 2017, no pet.) (mem. op.) (in context of case brought by State to terminate parental rights, describing due process analysis for "determin[ing] whether the fundamental requirements of due process have been met by affording an opportunity to be heard at a meaningful time and in a meaningful manner under the circumstances of the case"); *Larson v. Giesenschlag*, 368 S.W.3d 792, 798 (Tex. App.—Austin 2012, no pet.) (explaining in context of private termination suit that incarcerated parent "had a right to be heard in suit seeking to terminate his parental rights" "in *some* meaningful manner"); *In re S.K.A.*, 236 S.W.3d 875, 692–93 (Tex. App.—Texarkana 2007, pet. denied) (describing procedural due process analysis in context of case brought by State to terminate parental rights).

Further, we observe that V.A.C. does not have standing to complain about alleged deficiencies in the children's representation. *See A.E. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00414-CV, 2014 Tex. App. LEXIS 13726, at *13 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (explaining that "parent in a parental-termination case does not have standing to complain about alleged deficiencies in his children's or spouse's representation"). On these bases, we overrule his remaining issues.

21

## CONCLUSION

Having overruled V.A.C.'s issues, we affirm the trial court's final order of termination.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: August 28, 2018