STATE of Maine

v.

**Guy A. MARCOTTE and Marcotte and Neault, Inc.**

Supreme Judicial Court of Maine.

Argued June 17, 1980.

Decided Aug. 27, 1980.

Michael E. Saucier, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Preti, Flaherty & Beliveau, Harold J. Friedman (orally), Daniel Rapaport, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GLASSMAN, and ROBERTS, JJ.

ROBERTS, Justice.

Guy Marcotte and Marcotte and Neault, Inc., were indicted on seven counts of theft for failure to remit sales tax incurred in the course of a retail furniture business, pursuant to 17–A M.R.S.A. § 358, Theft by Misapplication of Property. Two additional counts were based on the recently enacted section 1924 of title 36. Upon motion of the defendants, the Superior Court dismissed the section 358 counts for failure to allege an offense. Reasoning that the sales tax is the personal debt of the retailer and not the purchaser, the presiding justice held that criminal liability could not arise from failure to pay a civil obligation. The state appealed pursuant to 15 M.R.S.A. § 2115–A. We affirm the dismissals.

With appropriate changes in dates, each of the first seven counts are identical to Count I which reads as follows:

### COUNT I

1. That at all times material herein, Neault & Marcotte, Inc., was a Maine corporation and operated as a retail furniture store located at 315 Main Street, Biddeford, Maine.

2. That at all times material herein, Neault & Marcotte, Inc., was under an obligation to make payment of all sales taxes to the Maine State Tax Assessor on or before the 15th day of the month following the month in which corresponding sales were made.

3. That at all times material herein, Guy A. Marcotte was Treasurer of Neault & Marcotte, Inc., and the agent of the corporation primarily responsible for payment to the State Tax Assessor of state sales taxes collected by Neault & Marcotte, Inc.

4. That, on or about September 15, 1976, in the County of York, State of Maine, Guy A. Marcotte and Neault & Marcotte, Inc. did commit theft of the property of the State of Maine, to wit, an amount not in excess of $500, in that, Guy A. Marcotte being the agent of Neault & Marcotte, Inc. primarily responsible for the payment of state sales taxes

and Neault & Marcotte, Inc. having obtained payments for state sales taxes during the month of August, 1976, from various purchasers of furniture and related items and subject to a legal obligation known to said Guy A. Marcotte and Neault & Marcotte, Inc. to make payment of all said sales taxes to the State Tax Assessor, said Guy A. Marcotte and Neault & Marcotte, Inc. did intentionally or recklessly fail to make the required payment of all said sales tax monies to the State Tax Assessor and did thereafter deal with the property so obtained or withheld as the property of Neault & Marcotte, Inc.

The issue before us is whether 17–A M.R.S.A. § 358 applies to an intentional or reckless failure by a retailer to make the required monthly payment of sales tax to the state tax assessor. As observed in the comment to § 358, "it lies close to the border between criminality and mere civil failure to perform a contractual obligation." Our obligation in this case is to determine on which side of the border the alleged conduct lies.

Section 358 of title 17–A provides as follows:

§ 358. Theft by misapplication of property

1. A person is guilty of theft if he obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by himself, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, if he intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as his own.

2. Liability under subsection 1 is not affected by the fact that it may be impossible to identify particular property as belonging to the victim at the time of the failure to make the required payment or disposition.

3. An officer or employee of the government or of a financial institution is presumed:

A. To know of any legal obligation relevant to his liability under this section; and

B. To have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of his accounts.

Assuming *arguendo* that the indictment properly alleges that the defendants obtained property (sales tax) from someone (the purchaser) subject to a known legal obligation (imposed by statute) to make a specified payment (monthly payment) to a third person (state tax assessor) and that they intentionally or recklessly failed to make the required payment and dealt with the property (tax money) as their own, we must consider the significance of the statutory phrase "from that property . . . or from [their] own property *to be reserved* in an equivalent . . . amount." The literal language of that phrase would require the existence of either a statutory obligation to make the specified statutory payment from the property obtained (sales tax receipts) or a statutory obligation to *reserve* an equivalent amount of the defendants' own property. No such obligation is contained in the statutes relating to Maine's sales tax.[1] The obligation to pay monthly a percentage of gross sales regardless of sales tax receipts is not the same as an obligation to make payment of the sales tax received. No language of the sales tax statutes requires the retailer to sequester or reserve from his own property an amount equivalent to either the sales tax receipts or the anticipated sales tax obligation.

Perhaps we should not read so literally the language of section 358. The section is based on the New Hampshire Criminal Code, Section 637:10 which in turn is derived from the Model Penal Code, § 223.8 (1962). The Model Penal Code section reads, in relevant part:

A person who purposely obtains property upon agreement, or subject to a known legal obligation, to make specified payment or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the actor's failure to make the required payment or disposition.

Essentially, the difference between Maine's Code and the Model Penal Code as ultimately adopted is the addition of the phrase "or personal services from an employee" and the phrase "to a third person or to a fund administered by himself." Since these additions are not pertinent to our inquiry, we may profitably compare the comments to the Maine Code with those to the Model Penal Code, as well as the discussion surrounding the adoption of the Model Penal Code by the American Law Institute in 1962.

The comments to section 358 as well as section 351 of the Maine Code make clear that within chapter 15 a comprehensive scheme was designed to deal with the crimes formerly characterized as larceny, embezzlement, false pretenses and the like. The consolidation of offenses under a single crime called theft was adopted directly from the Model Penal Code. 17–A M.R.S.A. § 351, Comment. More specifically, the comment to § 358 states in part:

The aim of this section is to reach cases where the wrongdoing does not necessari-

---

1. The conduct alleged in the first seven counts occurred prior to the enactment of 36 M.R.S.A. §§ 1921–1925, effective October 24, 1977. Section 1921 provides for the first time that taxes collected by any retailer "shall constitute a special fund in trust for the Tax Assessor." Misappropriation of such trust funds is made a Class D offense under section 1924. In addition, section 1922 requires that after notice from the tax assessor the trust funds shall be segregated and deposited daily in a special bank account. We need not now decide the significance of these additional provisions in relation to 17–A M.R.S.A. § 358.

ly proceed against the identifiable property of someone other than the accused. The thrust of the definition is a culpable failure to carry out a legal duty. In this sense, it lies close to the border between criminality and mere civil failure to perform a contractual obligation.

The essential difficulty with interpreting section 358 is formulating a test by which to distinguish criminal conduct from more traditional debtor-creditor relationships which do not merit the imposition of criminal sanctions. Thus, it is critical to determine where that line was drawn by the drafters of the Code and by the legislature in enacting this section without engrafting thereon by judicial interpretation all of the technicalities historically associated with the crime of embezzlement.

Section 223.8 of the Model Penal Code was originally presented as section 206.4 in Tentative Draft No. 2. The general provisions of that draft placed the burden on the defendant to prove "that his obligation in the transaction was limited to a promise or other duty to be performed in the future without any present duty to reserve property for such performance." Model Penal Code, § 206.4 (Tent. Draft No. 2 at 79–80 (1954)).

The Comment makes clear that the purpose of the draftsmen was to eliminate technical distinctions without "putting the force of criminal law behind transactions which are in fact credit transactions." *Id.* at 81. Of significance to our inquiry are the following additional statements:

> Liability is imposed only where the understanding or obligation was to "reserve" an amount of assets for the performance of the obligation.
>
> The section applies also where statutes require certain classes of persons who receive funds to reserve such funds for particular purposes.

*Id.*

After some redrafting, the section incorporated in the Proposed Official Draft as § 223.8 was virtually identical to section 358 in the Maine Criminal Code. The redrafting, however, left no requirement that the payment be made from property "to be reserved in equivalent amount" and therefore the distinction between civil breach of contract and criminal breach of trust became blurred.

During the 1962 proceedings of the American Law Institute when section 223.8 was discussed, Professor Schwartz responded to criticism of the Proposed Official Draft by proposing to insert the words "to be reserved in equivalent amount." He acknowledged that section 223.8 was "right on the border line between theft, embezzlement, and mere violation of a contract." Professor Schwartz also pointed out that "the same thought was in the original draft, but the clause was dropped out after some discussion" and that "it ought to go back in." 39 ALI Proceedings 174, 175 (1962).

■ The line had been drawn to limit criminal liability to those situations where a kind of trust or fiduciary obligation required an equivalent amount to be reserved. Accordingly, we hold that under section 358 of the Maine Criminal Code, if there exists no agreement or legal obligation to make payment from the property obtained or its proceeds or from property *to be reserved* in equivalent amount, there can be no criminal liability. This requirement is similar in nature to a fiduciary or trust relationship.

■ The question then becomes whether 36 M.R.S.A. §§ 1751–2113, dealing with sales and use taxes, require a retailer to reserve funds for payment to the state, such that his intentional or reckless failure to pay sales tax which is due and owing constitutes theft within the meaning of section 358. We hold that there is no such duty and that consequently no criminal liability exists under section 358 in this case.

■ As of the date of the alleged commission of the offenses, no duty to segregate sales tax receipts is found in title 36. Neither is there any language describing the retailer as an agent for the collection of taxes or the taxes collected as held in trust for the State of Maine. Sections 1811 and 1812 require the retailer to add a 5% sales

tax to the price of articles subject to tax. Section 1812 specifically provides, *inter alia*, that "[the tax] shall be a debt of the purchaser to the retailer until paid and shall be recoverable at law in the same manner as the purchase price." The tax also becomes a personal debt of the retailer to the state recoverable in a civil action, 36 M.R.S.A. § 1953, and is assessed under 36 M.R.S.A. §§ 1951–1952, not on the basis of actual sales tax receipts but on the basis of 5% of the retailer's gross sales. *W. S. Libbey Co. v. Johnson*, 148 Me. 410, 94 A.2d 907 (1953). Although the ultimate economic burden falls upon the consumer, the legal incidence of the tax rests squarely on the retailer. *Harvey F. Gamage, Shipbuilder, Inc. v. Halperin*, Me., 359 A.2d 72 (1976).

The state has cited only one case in which a retailer has been prosecuted for sales tax violation under a theft by misapplication of property statute. In *State v. Gates*, 394 N.E.2d 247 (Ind.App.1979), the prosecution was based upon a statute similar to Tentative Draft No. 2 of the Model Penal Code. Thus, an exception for the absence of any present duty to reserve property appears instead of the phrase "to be reserved in equivalent amount." More significantly, however, the Court of Appeals specifically focused on an Indiana statutory provision describing the collected sales taxes as constituting "a *trust fund* in the hands of the retail merchant and [being] owned by the state." 394 N.E.2d at 249 (emphasis by the Indiana court).

Another case cited by the state and referred to in *Gates* is *Commonwealth v. Shafer*, 414 Pa. 613, 202 A.2d 308 (1964). There, the court upheld a conviction for embezzlement of collected sales taxes under a general criminal statute. The statute is entirely dissimilar to ours, providing in part that "[w]hoever, being charged with the collection, safekeeping, or transfer of any taxes of the Commonwealth . . . converts or appropriates the moneys so collected . . . is guilty of embezzlement . . . ." 202 A.2d at 310. The court held that the term "whoever" encompassed not only tax collectors but vendors who were statutorily charged with the duty of collecting and remitting taxes. Additionally, Pennsylvania law designated the taxes collected as a "trust fund for the Commonwealth". *Id.* Both *Gates* and *Shafer* are inapposite to the instant case.

■ The state contends finally that even if section 358 does not apply, section 351 permits the state to prove any type of theft at trial, subject only to unfair surprise. Consequently, the state would prove "Theft by Unauthorized Taking" under 17–A M.R.S.A. § 353. The conduct alleged in the indictment, however, involved no "unauthorized control over the property of another." [2] Under title 36, the retailer is authorized to exercise control over and comingle sales tax receipts. Thus, we conclude, as to the facts alleged in this case, that the result is no different under either section 353 or section 358.[3]

The entry is:

Appeal denied.

Judgment of dismissal affirmed.

WERNICK and GLASSMAN, JJ., concur.

McKUSICK, C. J., concurs separately.

---

2. Section 353 reads as follows:

    1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with the intent to deprive him thereof.

    2. As used in this section, "exercises unauthorized control" includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, larceny by conversion, larceny by bailee, and embezzlement.

3. We note that the conduct alleged in counts 1 through 7 may not be without criminal sanctions. As of the dates alleged in the indictment, 36 M.R.S.A. § 2113 provided in part: "Any violation of any provision of chapters 211 to 225 (§§ 1751–2113) for which a penalty is not provided by any other Title of the Revised Statutes may be punished by a fine of not less than $20 nor more than $500, or by imprisonment for not more than 11 months or by both."

McKUSICK, Chief Justice, concurring.

Although my colleagues place a construction on section 358 and the Sales and Use Tax Law that in my judgment is not free from doubt, neither is the legislative intent as to the interaction of those enactments clear enough to justify imposing Class B sanctions[1] upon a retailer. So far as the court is informed, at no time prior to the present indictment in 1979 has the State during all the 28 years of the sales tax even once charged any retailer with criminal liability under section 358 ("theft by misapplication of property") or its pre–Code counterpart, 17 M.R.S.A. § 2107 ("embezzlement or fraudulent conversion"). It is a fundamental principle of criminal law that persons subjected to the potential of severe punishment should be given reasonable notice of what the legislature makes criminal. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *Knowlton v. State*, Me., 257 A.2d 409, 409–10 (1969). For that reason, penal statutes are strictly construed. *State v. Millett*, Me., 392 A.2d 521, 525 (1978). It is simply impossible to say that Maine retailers have ever been put on fair notice, at least prior to October 24, 1977,[2] that they must put the sales taxes they have collected from customers into a special reserve fund. Nor is it clear from section 358 that such a special reserve fund or its equivalent is not required for criminal liability under that section.

As for retailers who have in the past diverted sales tax moneys, the State is not without criminal remedy. Any individual violation of the Sales and Use Tax Law, including failure to report and failure to pay, has been unmistakably declared to be a crime, punishable by a fine of up to $500 or imprisonment for up to 11 months or both.[3] As for the future, if the legislature believes that any retailer should be subject to the same criminal liabilities for embezzlement as the ordinary collection agent who does not remit collected funds to his principal, its draftsmen are fully capable of implementing that intent with clarity—either by amendment of section 358 or by amendment of the Sales and Use Tax Law. In the instant case I agree that the first seven counts of the indictment cannot stand.

---

1. If more than $5,000 is involved in a section 358 crime, it is classified as a Class B offense, punishable by imprisonment of up to 10 years or a fine of up to $10,000. 17–A M.R.S.A. §§ 362, 1252(2), 1301(1).

2. Since the first seven counts of the indictment involve sales taxes collected prior to October 24, 1977, we have no occasion to consider the consequences of the legislative enactment that went into effect on that date declaring that "[a]ll [sales] taxes collected by any retailer from purchasers . . . shall constitute a special fund in trust for the Tax Assessor" (36 M.R.S.A. § 1921, enacted by P.L.1977, ch. 316, § 2), but at the same time providing for the Tax Assessor to give any retailer notice when the trust funds must be segregated, *id.* § 1922.

3. 36 M.R.S.A. § 2113 (1964), which was amended by P.L.1978, ch. 696, § 277, effective March 31, 1978, to make "[a]ny violation of [the Sales and Use Tax Law] for which a penalty or forfeiture is not provided by any other Title of the Revised Statutes . . . a Class E crime." The maximum imprisonment for a Class E offense is 6 months. 17–A M.R.S.A. § 1252(2).