IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,260

STATE OF KANSAS,
*Appellant*,

v.

MARIA ACADIA RUIZ,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Kansas Department of Revenue does not have an "interest" in unremitted sales taxes collected by retailers under the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 et seq., and is thus not an "owner" of those unremitted taxes for purposes of K.S.A. 2022 Supp. 21-5801.

2.

For purposes of K.S.A. 2022 Supp. 21-5801, a retailer does not exert unauthorized control over collected sales taxes by failing to remit them at the time mandated by K.S.A. 79-3607.

3.

The Kansas Retailers' Sales Tax Act imposes statutory duties upon retailers with respect to the collection and payment of sales taxes. K.S.A. 79-3615 provides the State a self-contained set of remedies for a retailer's violation of those statutory duties.

1

4.

Collected, unremitted sales taxes do not qualify as a "debt" between retailers and the Kansas Department of Revenue within the meaning of section 16 of the Kansas Constitution Bill of Rights.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 8, 2022. Appeal from Ford District Court; LAURA H. LEWIS, judge. Oral argument held December 14, 2022. Opinion filed November 17, 2023. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Jodi Litfin,* assistant solicitor general, argued the cause, and *Kristafer R. Ailslieger*, deputy solicitor general, *Stacy Edwards*, deputy attorney general, *Rebecca Silvermintz*, assistant attorney general, *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with her on the briefs for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

WILSON, J.: After Maria Acadia Ruiz failed to remit almost $50,000 in sales taxes she collected while operating her business, the State charged her with one count each of felony theft and violation of the Kansas Retailers' Sales Tax Act. On Ruiz' motion after preliminary hearing, the district court dismissed the felony theft charge as multiplicitous. A panel of the Court of Appeals reversed that decision, holding that the two charges were not multiplicitous and that the State presented sufficient evidence to bind Ruiz over on the felony theft charge.

Ruiz petitioned this court for review, which we granted. After oral arguments, we ordered the parties to submit additional briefing, which they did. We conclude that the State's theory of felony theft is insufficient as a matter of law on these facts. Here, the State is not an "owner" of the taxes for purposes of our felony theft statute, so Ruiz did not exercise "unauthorized control" over them. Rather, the taxes she owed to the State constitute a specific, legislatively created liability. Finally, the opening phrase of the Kansas Retailers' Sales Tax Act's criminal penalty provision, and the potential civil penalties throughout the entire statutory section, convey legislative intent to confine the applicable criminal ramifications to those set forth in the Act. We thus affirm the district court's dismissal of Ruiz' felony theft charge and reverse the panel's ruling on the same point, although on different grounds.

FACTS AND PROCEDURAL HISTORY

According to evidence presented at the preliminary hearing before the district magistrate judge, Ruiz started a business in 2014 called Ruiz Enterprise LLC. As the business' sole member-manager, Ruiz ran a restaurant called the Inn Pancake House in Dodge City, Kansas. Between August 2015 and December 2016, Ruiz' business filed sales tax returns without paying any sales tax—a total of $50,774.06 over the period—although Ruiz subsequently paid $1,500 to bring the total down to $49,274.06. Rather than paying the collected taxes to the state, Ruiz spent the money on routine business expenses because her business "fell on hard times."

Ruiz' business closed in 2017. Since then, Ruiz has made no payments toward the $49,274.06 still outstanding.

The State ultimately charged Ruiz with one count of violating the Kansas Retailers' Sales Tax Act (Tax Act), and one count of felony theft. Ruiz moved to dismiss

3

the felony theft charge, arguing the charge impermissibly "attempts to expand the tax act." After the parties argued the motion at preliminary hearing, the district magistrate judge denied the motion, concluding "that the specific and general crime [doctrine] does not apply to this case, that there are two separate crimes that were committed and that she could be prosecuted on both." The magistrate also found sufficient evidence to bind Ruiz over on felony theft.

Ruiz appealed to the district court, the appropriate procedure when the magistrate judge is a lay person. K.S.A. 2019 Supp. 22-3609a(1). After a hearing, at which the State discussed the general/specific offense doctrine set out in K.S.A. 2019 Supp. 21-5109(d), the district court dismissed the felony theft charge on multiplicity grounds. Although the court wrote that it "'does not find a need to address the parties' additional arguments of general vs. specific statutory analysis or the Rule of Lenity,'" it still discussed aspects of the parties' general vs. specific arguments. *State v. Ruiz*, No. 123,260, 2022 WL 1051898, at *2 (Kan. App. 2022) (unpublished opinion).

After the district court denied the State's subsequent motion to reconsider, the State moved to dismiss the Tax Act violation charge without prejudice, which the district court did. The State then appealed.

A panel of the Court of Appeals declined to address the general/specific offense statute (K.S.A. 2022 Supp. 21-5109[d]), or the doctrine itself, because the district court "explicitly declined to make a finding on the general versus specific statute rule." *Ruiz*, 2022 WL 1051898, at *4. The panel instead suggested the parties raise the issue on remand. 2022 WL 1051898, at *4. The panel also rejected the district court's multiplicity analysis. 2022 WL 1051898, at *3. Finally, the panel concluded that the State presented sufficient evidence for the court to bind Ruiz over on felony theft. 2022 WL 1051898, at *5.

Ruiz petitioned this court for review, which we granted. After the parties presented oral arguments to this court, we ordered them to submit additional briefing on four questions we raised sua sponte. First, is a pretrial motion to dismiss on multiplicity grounds premature? Second, is a claim for relief under K.S.A. 2022 Supp. 21-5109(d) (statutory codification of the general/specific doctrine) premature? Third, what have other states' appellate courts said about whether a person may be convicted of both a failure to pay a tax imposed and theft when interpreting statutes similar to ours? Finally, does imprisonment for the crimes charged here violate section 16 of the Kansas Constitution Bill of Rights? The parties submitted thorough briefs on these questions, clearing the way for our analysis. E.g., *City of Wichita v. Trotter*, 316 Kan. 310, 322, 514 P.3d 1050 (2022) (when an appellate court sua sponte raises an issue, counsel should be afforded a fair opportunity to brief the new issue).

ANALYSIS

At their core, all of Ruiz' challenges—whether predicated on multiplicity, the general/specific offense doctrine codified by K.S.A. 2022 Supp. 21-5109(d), the self-contained nature of the Tax Act, the sufficiency of the evidence, or the definition of "owner" for purposes of our theft statute, K.S.A. 2022 Supp. 21-5801(a) and (b)(2)—center on the asserted legal incompatibility between statutory theft and a statutory Tax Act violation. We thus consider her claims collectively as presenting a question of statutory construction.

We review issues of statutory construction de novo. E.g., *State v. George*, 311 Kan. 693, 696, 466 P.3d 469 (2020). Our framework is well known:

5

"'The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity.'

"An apparently clear statute may nevertheless manifest ambiguity when applied to the particular facts of a case. [Citations omitted.]" *State v. Scheuerman*, 314 Kan. 583, 587, 502 P.3d 502, *cert. denied* 143 S. Ct. 403 (2022).

Thus, K.S.A. 2022 Supp. 21-5109 provides our starting point:

"(a) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. . . .

. . . .

"(d) Unless otherwise provided by law, when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, the defendant:

(1) May not be convicted of the two crimes based upon the same conduct; and

(2) shall be sentenced according to the terms of the more specific crime."

We next turn to the statutory definitions of the crimes charged: a Tax Act violation and felony theft. K.S.A. 79-3615, in relevant part, sets forth criminal penalties for applicable violations of the Tax Act:

"(h) *In addition to all other penalties provided by this section*, any person who willfully fails to make a return or to pay any tax imposed under the Kansas retailers' sales tax act, or who makes a false or fraudulent return, or fails to keep any books or records prescribed by this act, or who willfully violates any regulations of the secretary of revenue, for the enforcement and administration of this act, or who aids and abets another in attempting to evade the payment of any tax imposed by this act, or who violates any other provision of this act, shall, upon conviction thereof, be *fined* not less than $500, nor more than $10,000, or be *imprisoned* in the county jail not less than one month, nor more than six months, or be both so fined and imprisoned, in the discretion of the court." (Emphases added.)

K.S.A. 2022 Supp. 21-5801, in relevant part, defines theft:

"(a) Theft is any of the following acts done with intent to permanently deprive the *owner* of the possession, use or benefit of the owner's property or services:

(1) Obtaining or *exerting unauthorized control* over property or services;

. . . .

"(b) Theft of:

. . . .

(2) property or services of the value of at least $25,000 but less than $100,000 is a severity level 7, nonperson felony." (Emphases added.)

Central to its theft charge, the State alleges that Ruiz exerted unauthorized control over $49,274.06 in collected sales taxes by intentionally failing to remit those funds with an intent to permanently deprive the State—the funds' owner—of their possession, use, or

7

benefit. While this legal theory at first sounds plausible, a detailed examination of the elements reveals its infirmities.

K.S.A. 2022 Supp. 21-5111(s) broadly defines "owner" as "a person who has *any interest* in property," (emphasis added) and K.S.A. 2022 Supp. 21-5111(t) clarifies that the Kansas Department of Revenue—as a government agency—is a "person." K.S.A. 2022 Supp. 21-5111(w) defines "property" as "anything of value, tangible or intangible, real or personal."

While it may at first appear the amount of sales tax collected by a retailer would constitute an "interest" in "property," the State has no immediate right to that specific amount, any more than it has an immediate right to the *retailer's* property in general. The tax "property" exists, if at all, only as a liability on a balance sheet to be paid on a statutorily mandated date. The retailer may deposit all the funds in her own bank account, and the State has no right even to question the bank account's balance, let alone attempt to do anything with the collective amount—whether it is payment for the pancakes or for the sales tax on the pancakes. No law prevents the funds from being commingled or even spent before the taxes become due.

So what, if any, "interest" does the State have in collected, unpaid sales taxes? After all, while a balance sheet liability may have "value" as an accounting construct—and so qualifies as "property" under the broad definition of the Kansas Criminal Code—its inherently unrealized nature undercuts the notion that the State has an "interest" in it under our theft statute. The answer to this question also necessarily casts doubt on whether—and at what point—a retailer exercises "unauthorized" control over sales taxes. To better understand these problems, we take a step back to consider the duties imposed on retailers by our tax statutes.

K.S.A. 79-3603 establishes a tax on the sale of various goods and the provision of various services "[f]or the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the services taxable under this act." K.S.A. 79-3604 then details a retailer's obligations under the Tax Act:

"The tax levied under the Kansas retailers' sales tax act shall be paid by the consumer or user to the retailer and it shall be the *duty of each and every retailer in this state to collect from the consumer or user, the full amount of the tax imposed* or an amount equal as nearly as possible or practicable to the average equivalent thereof. Such tax shall be a debt from the consumer or user to the retailer, when so added to the original purchase price, and shall be recoverable at law in the same manner as other debts . . . .

. . . .

"Whenever the director of taxation determines that in the retail sale of any tangible personal property or services because of the nature of the operation of the business including the turnover of independent contractors, the lack of a place of business in which to display a registration certificate or keep records, the lack of adequate records or because such retailers are minors or transients there is a likelihood that the state will lose tax funds due to the difficulty of policing such business operations, *it shall be the duty of the vendor to such person to collect the full amount of the tax imposed by this act and to make a return and payment of the tax* to the director of taxation in like manner as that provided for the making of returns and the payment of taxes by retailers under the provisions of this act. The director shall notify the vendor or vendors to such retailer of the duty to collect and make a return and payment of the tax.

"In the event the full amount of the tax provided by this act is not paid to the retailer by the consumer or user, the director of taxation may proceed directly against the consumer or user to collect the full amount of the tax due on the retail sale." (Emphases added.)

9

K.S.A. 79-3607 imposes additional duties upon retailers, including filing returns. K.S.A. 79-3607(a) clarifies that "[t]he retailer shall, at the time of making such return, pay to the director the amount of tax herein imposed," although it also empowers the director of taxation to "extend the time for making returns and paying the tax required by this act for any period not to exceed 60 days under such rules and regulations as the secretary of revenue may prescribe." K.S.A. 79-3617 establishes a procedure for the collection of delinquent taxes, which includes the issuance of a warrant and the initiation of court proceedings. Finally, K.S.A. 79-3615 sets forth a plethora of interest and penalties that may be added to the tax assessments for various violations of the Tax Act, along with ways the interest and penalties may be waived, reduced, abated, or refunded.

Thus, the ultimate destiny of sales taxes—whether or not collected by a retailer—rests with the State, by statute. But this is different from the State having an "interest" in the collected sales taxes for purposes of the Kansas Criminal Code. We have previously recognized that "owners" may commit theft by stealing their own property from those to whom a special, superior *possessory* interest has been granted. E.g., *State v. Etape*, 237 Kan. 380, 383, 699 P.2d 532 (1985) ("one who has a mechanic's lien on property has a superior possessory interest as against the general owner, and if the general owner takes the property without permission and without satisfying the lien he may be guilty of theft provided it is done with a felonious intent to deprive the lienholder of his rights"); *State v. Coburn*, 220 Kan. 750, 756, 556 P.2d 382 (1976) (in a theft case when multiple parties claimed ownership over tangible property, court held that a consideration of which party "'had a greater right to possession'" "comport[ed] with our statutory definition of an owner as one who has 'any interest in property'").

"Under ordinary circumstances a person cannot commit a larceny by taking possession of his own property, but, if the general owner has transferred a special interest or ownership

10

to another, one taking the possession of the property from the other, with the intent to deprive him of his rights and interest, may be guilty of larceny." *State v. Hubbard*, 126 Kan. 129, 131, 266 P. 939 (1928).

But the tax statutes do not grant KDOR a superior *possessory* right—and thus an interest—in the collected sales taxes. Instead, they grant KDOR the authority to proceed against a delinquent taxpayer for the collection of those taxes in various ways, including the imposition of statutory penalties. In other words, our Tax Act does not grant the State an ownership interest in a retailer's general accounts; it merely imposes on the retailer the duty to pay the State the taxes it owes—a duty reinforced by statutory penalties and other enforcement mechanisms *specific* to the Tax Act.

Further, nothing in our tax statutes either imposes a fiduciary duty upon retailers in favor of the State or requires a retailer to set aside collected sales taxes in a trust or separate account, as some jurisdictions do. For example, in *Kibbey v. State*, 733 N.E.2d 991, 995 n.4 (Ind. Ct. App. 2000), the tax statute specifically stated the retail taxes were held from the time of collection "'in trust for the state,'" giving the State an explicit, and immediate, interest in the collected funds. Likewise, in *State v. Kennedy*, 130 N.C. App. 399, 402, 503 S.E.2d 133 (1998), *aff'd* 350 N.C. 87, 511 S.E.2d 305 (1999), the sales tax collected was statutorily required to be held by the retailer "as trustee for and on account of the State . . . ." And while the Texas Court of Appeals in *Davis v. State*, 904 S.W.2d 946, 953 (Tex. Ct. App. 1995), found an implicit agency relationship creating a fiduciary duty to the state in those segregated tax dollars, we find no such implication in our tax act. Instead, our statutes leave retailers free to comingle collected sales taxes with the rest of their general funds. Thus, as long as the retailer collects the appropriate tax from purchasers and is able to pay the required amount of sales taxes from *some* source at the time the payment is due, it fulfills its statutory obligations under K.S.A. 79-3604 and K.S.A. 79-3607(a). We do not read these statutes to grant the State constructive

ownership over a retailer's accounts just because the Tax Act confers upon retailers a duty to remit collected taxes. Instead, the Tax Act provides enforcement mechanisms for the State to collect on the amount owed to it by retailers if they fail to remit payment at the time they make a return, as Ruiz did.

Of the cases cited by the parties in response to our request for supplemental briefing, two stand out as particularly persuasive. First, in *State v. Marcotte*, 418 A.2d 1118, 1119 (Me. 1980), the Supreme Judicial Court of Maine considered whether an individual could be charged both with failure to remit sales taxes and with theft by misapplication of property. Noting the concern voiced in comments to the theft by misapplication of property statute that its subject matter "'lies close to the border between criminality and mere civil failure to perform a contractual obligation,'" 418 A.2d at 1119, the court concluded that, under the theft by misapplication of property statute:

> "[I]f there exists no agreement or legal obligation to make payment from the property obtained or its proceeds or from property to be reserved in equivalent amount, there can be no criminal liability. This requirement is similar in nature to a fiduciary or trust relationship.

> "The question then becomes whether 36 M.R.S.A. ss 1751-2113, dealing with sales and use taxes, require a retailer to reserve funds for payment to the state, such that his intentional or reckless failure to pay sales tax which is due and owing constitutes theft within the meaning of section 358 [i.e., by misapplication of property]. We hold that there is no such duty and that consequently no criminal liability exists under section 358 in this case." *Marcotte*, 418 A.2d at 1121.

*Marcotte* then distinguished a pair of cases from Indiana and Pennsylvania, both of which required the retailer to set aside collected taxes as a form of trust fund that belonged to the state. 418 A.2d at 1122 (citing *State v. Gates*, 394 N.E.2d 247 [Ind. Ct.

12

App. 1979], and *Commonwealth v. Shafer*, 414 Pa. 613, 616-17, 202 A.2d 308 [1964]). Like Kansas, Maine's retail sales tax statute at the time neither contained any such requirement nor created a fiduciary relationship between the retailer and the state.

Finally, *Marcotte* disposed of the prosecution's backup argument: that even if the failure to remit sales tax did not constitute theft by misapplication of property, it still qualified under the more general theft statute. *Marcotte*, 418 A.2d at 1122. As the court wrote:

> "Consequently, the state would prove 'Theft by Unauthorized Taking' under 17-A M.R.S.A. s 353. The conduct alleged in the indictment, however, involved no 'unauthorized control over the property of another.' Under title 36, the retailer is authorized to exercise control over and comingle sales tax receipts. Thus, we conclude, as to the facts alleged in this case, that the result is no different under either section 353 or section 358." *Marcotte*, 418 A.2d at 1122.

As in *Marcotte*, Ruiz was under no duty to segregate collected sales taxes and could pay the State what she owed out of any source available to her. Her failure to remit the collected taxes along with her returns did not transform her control over the funds into "unauthorized" control because the State *had* no authorization to give. When considering the specific dollars collected, the State did not own those funds initially and did not later acquire ownership of them. Accordingly, Ruiz' failure to remit collected sales taxes does not satisfy the elements of K.S.A. 2022 Supp. 21-5801(a) and (b) as a matter of law.

Instead, the Tax Act establishes remedies available to the State—a specific set of remedies unique to sales taxes. This brings us to the second persuasive case cited by the parties. In *State v. Larson*, the Supreme Court of Minnesota considered whether a retailer

13

who failed to remit sales taxes it collected on automobile lease buyouts could be charged with failure to pay over state funds when another statute specifically penalized failure to remit sales taxes. After noting that the statute for failure to pay over state funds—and its predecessors—really addressed "embezzlement of public funds by anyone who has access to such funds," the court held that a prosecution under that statute for "[d]iverting sales tax funds"—which was criminalized in a separate statute—would "pervert[] legislative intent." *State v. Larson*, 605 N.W.2d 706, 716 (Minn. 2000). While noting that "as a general matter prosecutors may choose to prosecute under any statute that covers the prohibited activity," the court held the general rule inapplicable:

> "This, however, is not an instance where we encounter overlapping criminal provisions. The legislature, in drafting chapter 297A and including a criminal enforcement mechanism, intended non-remittance of sales tax to be covered by what is now section 289A.63. Instead of allowing 609.445, a felony statute, to act as the enforcement mechanism for collecting and remitting sales tax funds, the 1967 legislature drafted a criminal penalty provision for failure to turn over sales tax funds and made the penalty a misdemeanor." *Larson*, 605 N.W.2d at 717.

*Larson* reinforces another point stressed by Ruiz: that our Tax Act limits criminal liability to the penalties set forth in K.S.A. 79-3615, as shown by the use of the phrase, "In addition to all other penalties provided by *this section* . . . ." (Emphasis added.) Other cases cited by the parties reinforce the importance of this language. See, e.g., *Kennedy*, 130 N.C. App. at 402 (sales tax code did not provide exclusive remedy for prosecution when it proclaimed that its penalties were "'in addition to other penalties provided by law'"); *State v. Pescatore*, 213 N.J. Super. 22, 26-29, 516 A.2d 261 (1986) (rejecting claim that sales tax statute was self-contained because the statute's penalties were "'in addition to any other penalties herein or elsewhere prescribed'"), *aff'd* 105 N.J. 441, 522 A.2d 440 (1987); *Shafer*, 414 Pa. at 623 ("'the criminal offenses and penalties therefor prescribed by [the Sales Tax Act] shall be in addition to any criminal offenses prescribed

14

by the general laws of this Commonwealth'"). Through its focus on what is provided in "this section," the plain language of K.S.A. 79-3615(h) provides more evidence the Legislature intended to preclude the State from prosecuting retailers for not remitting sales tax under our felony theft statute.

But we pause to highlight the limits of our opinion today. We do not construe the phrase, "In addition to all other penalties provided by this section"—or similar language—to reflect universally a legislative intent to limit criminal liability to a specific section. Such a construction would contradict the broad discretion given to prosecutors under K.S.A. 2022 Supp. 21-5109(a). We only conclude that the limiting, introductory phrase of "by this section" further supports the Legislature's intent that the State is *not* the "owner" of sales taxes collected by retailers until those taxes are paid to the State, and that a retailer does not exert "unauthorized control" over those taxes by failing to pay them to the State at the time mandated by K.S.A. 79-3607.

We note a prior Court of Appeals panel's implication—in dicta—that the State is an owner of sales tax collected by a retailer. *State v. Parsons*, 11 Kan. App. 2d 220, 221, 720 P.2d 671 (1986) ("the sales tax did not belong *exclusively* to the State of Kansas"; further rationalizing that a retailer has an "interest" in collected sales tax because it is required to pay a percentage of its gross receipts to the State as a privilege tax [emphasis added]). We now clarify that a retailer's duties to collect sales tax from purchasers under K.S.A. 79-3604 and to pay those collected amounts to the State under K.S.A. 79-3607 at a set time do not make the State the "owner" of those funds under the meaning of K.S.A. 2022 Supp. 21-5111(s).

Because the State did not own the sales taxes collected by Ruiz, her failure to pay them at the statutorily mandated time did not constitute the exertion of unauthorized

control, as required for a felony theft prosecution. Consequently, the State's attempt to prosecute her for felony theft fails as a matter of law. The district court thus correctly dismissed Ruiz' felony theft charge, although we reach this conclusion by a different analytical pathway.

Before concluding, we address three final issues. First, though we asked the parties to brief whether a multiplicity analysis is premature, we leave that question unresolved for now. Under these facts, a charge for felony theft does not lie. Left with one viable charge—criminal violation of the Tax Act—multiplicity does not arise.

Second, a claim here for dismissal under the version of the general/specific offense doctrine codified in K.S.A. 2022 Supp. 21-5109(d)—whether or not premature before trial—likewise is inapplicable. Although we conclude a theft prosecution for Ruiz' alleged Tax Act violation is contrary to legislative intent, our rationale lies outside the general/specific offense doctrine. See *State v. Williams*, 250 Kan. 730, 829 P.2d 892 (1992); *State v. Wilcox*, 245 Kan. 76, 775 P.2d 177 (1989). See also 2010 Final Report to the Kansas Legislature, Vol. I, Kansas Criminal Code Recodification Commission, approved Dec. 16, 2009, Appendix A, p. 8 (citing *Williams* as an example of the rule being codified). Contra *State v. Euler*, 314 Kan. 391, 396, 499 P.3d 448 (2021) (disapproving the judicially created general/specific offense doctrine; noting—in a modified opinion—that the defendant *may* have had a statutory claim under K.S.A. 2020 Supp. 21-5109[d] but failed to preserve it).

Finally, we also asked the parties to brief the issue of whether imprisonment for the crimes charged here violates section 16 of the Kansas Constitution Bill of Rights, which prohibits imprisonment for "debt, except in cases of fraud." Although we have concluded that a prosecution for theft cannot lie on these facts, we must still consider whether section 16 condones imprisonment for a Tax Act violation. See K.S.A. 79-

3615(h) (listing, among other potential penalties, "imprison[ment] in the county jail [for] not less than one month, nor more than six months"). Because we view a retailer's obligations under the Tax Act as specific statutory duties, sales taxes collected by a retailer necessarily fall outside the meaning of "debts" as we have historically understood it—at least, as between the retailer and the Department of Revenue. K.S.A. 79-3604 ("Such tax shall be a debt from the consumer or user to the retailer."). E.g., *Burnett v. Trimmell*, 103 Kan. 130, 134, 173 P. 6 (1918) ("[P]enalty is not for failure to pay a debt, but for failure to do the thing expressly enjoined by the statute in reference to preparing a list of creditors."); *In re Wheeler*, 34 Kan. 96, 99, 8 P. 276 (1885); *State v. Krumroy*, 22 Kan. App. 2d 794, 798-99, 923 P.2d 1044 (1996). We have consistently viewed "debts"—for purposes of section 16 of the Kansas Constitution Bill of Rights—as arising upon *contracts*, express or implied. *State v. Jones*, 242 Kan. 385, 389-90, 748 P.2d 839 (1988); *Wheeler*, 34 Kan. at 100. Ruiz has made no serious argument or constitutional analysis suggesting our caselaw is wrong. Consequently, the Legislature's criminalization of a retailer's failure to remit sales tax does not violate section 16's proscription on imprisonment for "debt." Cf. *People v. Buffalo Confectionery Co.,* 78 Ill. 2d 447, 462, 401 N.E.2d 546 (1980) (Illinois use tax statute made retailers debtors of the state, therefore prohibiting prosecution for theft when a retailer failed to remit taxes).

CONCLUSION

We affirm the district court's dismissal of the felony theft charge on different grounds and reverse the Court of Appeals panel's decision on that point.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

17